**In the Matter of Richard Dudley MITCH-ELL and Ruby Della Donelson, d/b/a Marby's Style Shop, a Partnership, Bankrupts-Appellees,**

v.

**SHEPHERD MALL STATE BANK and Small Business Administration, Respondents-Appellant.**

No. 71–1342.

United States Court of Appeals, Tenth Circuit.

April 14, 1972.

---

Michael Kimmel, Atty., Dept. of Justice, Washington, D. C. (L. Patrick Gray, III, Asst. Atty. Gen., William R.

Burkett, U. S. Atty., and Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., with him on the brief), for appellant, Small Business Administration.

Norman E. Reynolds, Oklahoma City, Okl. (Paul F. Fernald, Oklahoma City, Okl., with him on the brief), for appellees, Trustee in Bankruptcy.

Before MURRAH, SETH and BARRETT, Circuit Judges.

MURRAH, Circuit Judge.

In April of 1968, the Shepherd Mall State Bank (Bank), located in Oklahoma City, made a $25,000 loan to James Edwards and Ruby Donelson, partners doing business as Marby's Fashions, a ladies' clothing concern with retail shops in two suburbs of Oklahoma City. The loan was guaranteed to the extent of 75% by the Small Business Administration (SBA) pursuant to the Small Business Act (15 U.S.C. § 636(a)) and its implementing regulations (13 C.F.R. 122.10). In order to secure the loan the parties also entered into a security agreement set forth on a form provided by SBA.

Section D of the security agreement bears the heading "COLLATERAL," and subsection D.1, thereunder, states: "The security interest is granted in the following collateral: Describe collateral." In the space provided for the description appears the typed statement: "See EQUIPMENT LIST attached hereto and made a part hereof, describing equipment, furniture and fixtures located at Moore and Edmond stores." A two-page list of equipment, furniture and fixtures, was attached to the security agreement.

Subsection D.2 of the section on "COLLATERAL" directs the parties to "Classify goods under (one or more of) the following Uniform Commercial Code categories," and contains five boxes labeled respectively "Consumer Goods," "Equipment (business use)," "Inventory," "Accounts Receivable," and "Contract Rights." All of these boxes except for the first one were checked.

Three days after entering into the security agreement, the Bank properly filed a financing statement which stated that it covered, "The following, now owned and hereafter acquired, located at Moore and Edmond stores: All machinery and equipment, furniture and fixtures, inventory and proceeds, accounts receivable and contract rights."

Approximately 18 months after the security agreement was executed and with a balance of $19,672.70 due on the loan, the debtors filed a voluntary bankruptcy petition. The Bank assigned its rights under the note and security agreement to SBA, and SBA filed its proof of a secured claim with the trustee in bankruptcy. The trustee objected to SBA's claim insofar as it asserted a security interest in any tangible or intangible property of the debtors other than the equipment listed on the pages attached to the security agreement, and the issue was heard by the bankruptcy referee. At this hearing the vice-president of the Bank who handled the loan was permitted to testify, over the trustee's objection, that it was the Bank's intention to take a security interest in inventory, accounts receivable, and contract rights, in addition to the items set forth in the equipment list. The referee found that SBA had an enforceable security interest in all of the items included in its claim. On review the District Court, 324 F.Supp. 1029, vacated the referee's order, concluding that the security agreement was unambiguous, that parol evidence to explain it was, thus, inadmissible, and that under the unambiguous terms SBA's security interest was limited to the items specifically enumerated in the list attached to the security agreement.

On appeal SBA claims that a security interest in inventory, accounts receivable, and contract rights was granted to the Bank by virtue of the check marks appearing in boxes bearing those labels in subsection D.2 of the security agreement. The terms of the financing statement and the testimony of the Bank's vice-president are invoked as extrinsic

evidence supporting SBA's construction of the security agreement.

While Article 9 of the Uniform Commercial Code has stripped the formal requirements for creation of a security interest to the bone, certain minimal requirements must still be observed.[1] 12A Okl.St.Ann. § 9–203(1)(b) states that a non-possessory security interest is not enforceable against either the debtor or third parties unless, "the debtor has signed a security agreement which contains a description of the collateral . . .." 12A Okl.St.Ann. § 9–105(1) (h) supplies further explication by defining the term "security agreement" as ". . . an agreement which creates or provides for a security interest." Cases and treatises construing these two sections have almost uniformly come to the conclusion that in order for a security agreement to be effective it must contain language which specifically creates or grants a security interest in the collateral described.[2] "While there are no magic words which create a security interest there must be language in the instrument which 'leads to the logical conclusion that it was the intention of the parties that a security interest be created.'" Evans v. Everett, 279 N.C. 352, 183 S.E.2d 109, 113 (1971).

Section D.1 of the security agreement in this case contains language which explicitly grants or creates a security interest in the collateral to which it refers. An examination of the agreement, however, leads to the inevitable conclusion that these "words of grant" refer only to the items alluded to in the space provided below section D.1, and specifically enumerated in the list attached to the agreement. The language appearing in section D.1 does not refer or apply to the classifications of collateral listed in section D.2, and the latter section contains no language of its own which may be read as granting or creating a security interest. Section D.2 was clearly included only as a means of classifying collateral otherwise described for purposes such as determining the proper place for the filing of financing statements. See 12A Okl.St.Ann. § 9–109, and official comment 1. It cannot reasonably be interpreted as expressing the parties' intention to extend the description of collateral referred to by the words of grant appearing elsewhere in the agreement. "A long and complex security agreement . . . as herein should not have the purpose or effect of concealing a description of the collateral. . . . [A]nyone who examines the agreement should not be required to read and interpret all of the fine print at his peril. He would only be interested in the collateral, as clearly designated by the form itself." In re Radabaugh, 4 UCC Rep.Serv. 355, 357 (S.D.Ohio 1966) (Referee's opinion).

The fact that the parties signed and filed a financing statement which covered inventory, accounts re-

---

1. It is asserted that the validity of SBA's claim should be governed by federal rather than state law since the security agreement is on an SBA form and was entered into as part of a uniform federal program. See Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); Cassidy Commission Co. v. United States, 387 F.2d 875 (10th Cir. 1967). It is agreed, however, that the Uniform Commercial Code provides the appropriate source of federal law. See United States v. Hext, 444 F.2d 804 (5th Cir. 1971). We, thus, rely on Oklahoma's version of the UCC, 12A Okl.St.Ann. § 1–101 et seq.

2. See, e. g., DuBay v. Williams, 417 F.2d 1277, 1285 (9th Cir. 1969); In re Walter W. Willis, Inc., 313 F.Supp. 1274, 1277–1278 (N.D. Ohio 1970), aff'd, 440 F.2d 995; In re Nottingham, 6 UCC Rep. Serv. 1197, 1199 (D.C.Tenn.1969) (Referee's opinion); In re Vielleux, 5 UCC Rep. Serv. 277, 278 (D.C.Conn.1967) (Referee's opinion); In re Martronics, Inc., 2 UCC Rep.Serv. 364, 366–367 (D.C.Conn. 1964) (Referee's opinion); Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, Iowa, 176 N.W.2d 166 (1970); American Card Co. v. H.M.H. Co., 97 R.I 59, 196 A.2d 150, 151 (1963); 4 Anderson, Uniform Commercial Code 157 (2d Ed.1971). See contra, 1 Gilmore, Security Interests in Personal Property, § 11.4, at 347–348 (1965).

**704**

ceivable, and contract rights, in addition to equipment, furniture, and fixtures, is of no consequence to our decision. The function of a financing statement is to put third parties on notice that the secured party who has filed it may have a perfected security interest in the collateral described. See 12A Okl.St.Ann. § 9–402 and official comment 2. Absent language which would constitute the debtor's grant of a security interest, a financing statement cannot serve as a security agreement.[3] The financing statement in this case contained nothing more than was necessary to meet the minimum requirements of 12A Okl.St. Ann. § 9–402, and fulfill the purposes of notice filing; there is no contention to the contrary. Under these circumstances, it cannot have the effect of enlarging the security agreement so as to create a security interest in collateral not described therein. In re Mann, 318 F.Supp. 32, 36 (W.D.Va.1970); In re Burkhard, 6 UCC Rep.Serv. 244, 247 (S.D.Ohio 1969) (Referee's opinion).

The security agreement form was provided by SBA for use of the Bank to describe the collateral in which a security interest was granted. If the instrument be ambiguous the Bank and SBA made it so, and they should not now be permitted to explain what is implicit in that which they failed to make explicit in the critical terms of the security agreement. The Code's requirements for the creation of security interests are simple and clearly set forth. Where forms to facilitate compliance with these requirements have been provided, the secured party ought to be able to fill in the blanks so as to avoid ambiguity with regard to the security interest granted.

We think that section D.1 of the security agreement unambiguously describes the collateral in which the security interest was granted, and that section D.2 was designed only to allow classification of that same collateral. In these circumstances we agree with the District Court that parol evidence as to the parties' intentions was inadmissible. In any event, accepted canons of construction compel us to construe this instrument strictly against its drafters, and to conclude, as did the District Court, that the security interest granted was limited to the items specifically enumerated in the equipment list attached to the security agreement. The order is affirmed.

3. See, e. g., Scott v. Stocker, 380 F.2d 123, 127 (10th Cir. 1967); Mid-Eastern Electronics, Inc. v. First Nat. Bank of So. Md., 380 F.2d 355, 356 (4th Cir. 1967); In re Carmichael Enterprises, Inc., 334 F. Supp. 94, 104 (N.D.Ga.1971); Evans v. Everett, supra; Kaiser Aluminum & Chemical Sales, Inc. v. Hurst, supra; M.

Rutkin Elect. Sup. Co., Inc. v. Burdette Elect., Inc., 98 N.J.Super. 378, 237 A.2d 500, 504 (1967); Plemens v. Didde-Glaser, Inc., 244 Md. 556, 224 A.2d 464, 468 (1966); Cain v. Country Club Delicatessen of Saybrook, Inc., 25 Conn.Sup. 327, 203 A.2d 441, 445 (1964); American Card Co. v. H.M.H. Co., supra.