### In the Matter of MIDDLE ATLANTIC STUD WELDING CO., Bankrupt.

### Appeal of TRU–FIT SCREW PRODUCTS CORP.

### No. 73–1719.

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 1974.

Decided Aug. 7, 1974.

Seitz, Chief Judge, dissented and filed opinion.

Jane R. Roth, David S. Swayze, Richard S. Layton & Finger, Wilmington, Del., for appellant.

John Biggs, III, Biggs & Battaglia, Wilmington, Del., for bankrupt.

John G. Mulford, Wilmington, Del., for trustee.

Before SEITZ, Chief Judge, and HASTIE and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

In a proceeding for an arrangement under Chapter XI of the Bankruptcy Act, Tru-Fit Screw Products Corporation has appealed from the district court's order affirming the referee's determination that the lien of a security agreement under which appellant was the secured party did not attach to the debtor's accounts receivable acquired after the date of the agreement.

On May 31, 1971 Middle Atlantic Stud Welding Co., now the debtor, executed a promissory note, two security agreements, and a financing statement in favor of appellant. One of the security agreements, which described various equipment as collateral, secured the amount of the note, and is not in question here. The other granted appellant a security interest in "all Receivables and proceeds thereof as security for the Liabilities". This agreement defined Receivables as "all of Debtor's Accounts Receivable", and Liabilities to mean "any and all indebtedness of Debtor to Secured Party of every kind and description, now existing or hereafter arising". The financing statement mirrored the security agreement.[1]

---

1. Because the contention had not been made to the referee, the district court refused to entertain an argument that some after-acquired accounts may have been proceeds of prior accounts. Accordingly, so do we.

The referee and the district court found that appellant and debtor intended the agreement to establish a security interest in after-acquired accounts receivable as well as those in existence on the date of the agreement.[2] They found that the parties intended to create and secure a long-term, ongoing, supplier-manufacturer relationship. Both tribunals, held however, that the absence of explicit reference to after-acquired accounts defeated appellant's claimed security interest under the Uniform Commercial Code, § 9-204.

At the time of the transactions now in question, section 9-204(3) of the Code stated, with exceptions not relevant here, that:

" . . . a security agreement may provide that collateral, whenever acquired, shall secure all obligations covered by the security agreement."[3]

Two other Code sections guide proper judgment of the nature of the language necessary so to provide. Section 9-110 states:

"For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

The Comment advises courts not to require the most exact and detailed description possible, but to be satisfied with a description that enables identification of the intended collateral. More generally, but in the same vein, section 1-102 suggests liberal construction to the end that underlying purposes and policies be promoted, including simplification and clarification of the law and continued expansion of commercial practices. The Comment adds that narrow as well as broad constructions are appropriate, depending upon the purposes and policies involved in a particular issue.

■ Appellant argues that the agreeement designating "all accounts receivable" as collateral reasonably identified after-acquired accounts, and thus complied with the Code requirements.[4] We now consider this issue in light of the present commercial practice of accounts receivable financing and possible abuse to which the statute, as appellant would apply it, might be subject.

As the Uniform Commercial Code gained nationwide acceptance much was written by commentators about floating lien financing. DuBay v. Williams, 9th Cir. 1969, 417 F.2d 1277, 1280 n. 2 (collecting commentary). The practice seems both familiar and important in the commercial world. E. g. Henson, "Proceeds" Under The Uniform Commerical Code, 65 Colum.L.Rev. 232 (1965); Coogan & Gordon, The Effect Of The Uniform Commercial Code Upon Receivables Financing—Some Answers and Some Unresolved Problems, 76 Harv.L.Rev. 1529, 1530 n. 2. (1963). Certainly current commercial practice makes wide use of floating lien financing on inventory and accounts receiva-

2. So much of appellee's argument as is based on a seemingly contrary premise is therefore flawed. It may be, however, that the appellee had in mind the understanding of a stranger to the agreement, not the intent of the parties themselves. That possibility is treated *infra*.

3. The latest Code revision has changed this to read:
" . . . a security agreement may provide that any or all obligations covered by the security agreement are to be secured by after-acquired collateral."

4. In the alternative Tru-Fit contends, first that its interest at least attached to post-agreement receivables due from those of Middle Atlantic's debtors who had open accounts on the date of the agreement. However, we find no basis for distinguishing these post-agreement receivables from after-acquired accounts generally. Second, Tru-Fit argues that it is entitled to all interest accrued on receivables held in escrow pendente lite, not only the pro rata portion attributable to the pre-May 31 accounts. The referee's order allocates interest to the rightful owners of the money on a pro rata basis. Tru-Fit contends that because the referee had previously awarded it the interest in question he could not later alter his decision. The district court sensibly responded that the tentative nature of the earlier order permitted the change to prevent a windfall to Tru-Fit.

ble. A seller who contemplates a long term relationship often will extend credit in return for a lien on buyer's inventory and receivables. The scheme is likely to contemplate that day to day extension of credit be secured by day to day receivables. Because the identity of the latter is in flux, the lien may be intended to float from today's receivables to tomorrow's.

There is thus a rational basis for appellant's premise that many persons, on reading that the collateral for the security agreement at bar is "all accounts receivable", would be alerted that the parties may well have intended to include after-acquired accounts. That thought could be reinforced in this case by observation that the agreement explicitly secures after-arising liability.[5] Thus, it is arguable that this particular agreement reasonably identifies after-acquired accounts receivable as part of the collateral. Indeed, in rather similar situations two courts of appeals have affirmed with little discussion district court decisions for the secured creditors. In re Nickerson & Nickerson, Inc., 8th Cir. 1971, 452 F.2d 56, affirming D. Neb., 329 F.Supp. 93 (floating lien on inventory); In re Fibre Glass Boat Corp., 5th Cir. 1971, 448 F.2d 781, affirming, S.D.Fla., 324 F.Supp. 1054 (inventory). In re Mitchell v. Shepherd Mall State Bank, 10th Cir. 1972, 458 F.2d 700, cited by appellees, is distinguishable because it did not involve after-acquired property at all.

■ On the other hand, it is neither onerous nor unreasonable to require a security agreement to make clear its intended collateral. This position does not require the most exact and detailed description possible, but only a clear designation of any class of items intended to be collateral. The general prohibition in pre-Code law on including after-acquired property as collateral heightens the sense of such a rule because, commerical

practice of including after-acquired property in collateral notwithstanding, a subsequent lender might expect the parties to make explicit an intention to include this kind of property, both for precision and because of the law's historic hostility·to such arrangements.

■ Further, a decision for appellant might well facilitate at least some abuse. Although it may be true that many, perhaps most, prospective lenders, on reading the present agreement, would obtain an unambiguous explanation of its full meaning from the secured party, some might be misled and proceed without inquiry. The ease with which a secured party could eliminate the danger of misleading any reasonable subsequent lender suggests that in administering the Code the courts should require him to do so.

A requirement that intended inclusion of after-acquired accounts receivable be unambiguously expressed will not significantly conflict with any important Code policies, and will support some. It will produce simpler, clearer and more certain law for all parties.

This appeal involves a question as yet infrequently adjudicated. Hence, our decision here cannot disturb any generally understood judicial interpretation of the Code. Affirmance will not require a return to the law of magic words. Neither will it go to the opposite extreme of flexibility urged by the appellant. It will be in keeping with the observation in the Comment to section 1–102, supra, that a degree of strictness in construction, as well as flexibility has proper application under the Code.

Last, this decision respects reasonable commercial need and expectation. The validity of after-acquired property clauses is recognized. Only the implication of such a clause through ambiguous language is rejected. It is hard to see how much implication would promote satisfactory conduct of business affairs.

5. On the other hand, the explicit mention of after-arising liability without a parallel mention of after-acquired security might be read as some indication that the latter was not intended.

Moreover, there is a logical trap regarding reasonable commercial expectation in this context: given the law's relatively recent hostility to after-acquired property clauses one might reasonably expect an express statement of any such intent and in the absence of such a statement, might reasonably conclude that in the bargaining process the parties agreed not to encumber after-acquired accounts.

The judgment will be affirmed.

SEITZ, Chief Judge (dissenting).

The majority holds that a secured party obtains no security interest, as against third parties, in the debtor's accounts receivable acquired after execution of a security agreement and filing of a financing statement absent an explicit declaration of such interest's creation in the documents. Requiring a security agreement explicitly to declare the parties' creation of a security interest in after-acquired property of many types both simplifies interpretation of such agreements and insures third parties of adequate notice of the extent of a perfected security interest in the debtor's property. I dissent, however, because I believe that the agreement involved here sufficiently notified interested persons that the Secured Party had a perfected interest in "all of Debtor's Accounts Receivable," including after-acquired accounts.

Financing of inventories and of accounts receivable has for years been the particular province of the "floating lien." Fluid financing arrangements in these areas are obviously necessary because the nature of specific inventory items or accounts is likely to vary daily, although the total value of a business' inventory or accounts may remain reasonably stable for long periods. It would, thus, be commercially reasonable to anticipate, unless the financing statement indicated otherwise, that security interests in inventory or accounts would include after-acquired property, even though the presumption would be reversed for other property.

The Code generally mandates that courts interpret its provisions in light of what is commercially reasonable. 5A Del.C. § 1–102. This general direction is incorporated into the provisions dealing with secured transactions by making any description that reasonably identifies the collateral sufficient description for a Security Agreement, 5A Del.C. § 9–203, Del. Study Comment; see also 5A Del.C. §§ 9–110, 9–402, and allowing a financing statement substantially complying with the requirements of § 9–402 to be effective even though it contains minor, not misleading errors. Del.C. § 9–402(5).

In line with the mandate of the UCC that it be given a commercially reasonable interpretation I would not read the Code as requiring an explicit statement to perfect an interest in after-acquired inventory or accounts, even though the requirement may not seem onerous to this Court—the Code enjoins courts to interpret its provisions in a commercially reasonable manner rather than to require businessmen to follow judicial decisions and comply with them so long as they are not onerous. We deal in commercial litigation with matters of contract; few requirements will be onerous in themselves, but we cannot reasonably expect businessmen to fulfill the onerous task of familiarizing themselves with all the pertinent case law before taking any action in the conduct of their businesses.

To justify the imposition of its explicit declaration requirement, the majority relies on pre-Code hostility to the use of after-acquired property as collateral. Whatever hostility existed prior to the UCC is irrelevant to our decision. The Code clearly authorizes security interests in after-acquired property and abolishes many of the technical rules of pre-Code law. The Financing Statement and Security Agreement make debtor's receivables security for its liabilities to the secured party. They define "Receivables" to mean "all of Debtor's Accounts Receivable" and "Liabilities" to mean "all indebtedness of Debtor to Secured

Party . . . now existing or hereafter arising." I would find, and I believe the pertinent state court would conclude, that under the UCC this language adequately notifies interested parties that the secured party had an interest in literally all debtor's accounts receivable, including after-acquired accounts.