**In re Gerald Dean HART & Nancy Katherine Hart, d/b/a Jerry's TV & Appliance, Debtors.**

**The LITCHFIELD NATIONAL BANK, a national banking corporation, Plaintiff,**

**v.**

**Gerald Dean HART, Nancy Katherine Hart, d/b/a Jerry's TV & Appliance, Russell C. Roberts, Trustee, National Bank of Mt. Olive, Borg-Warner Acceptance Corp., Defendants.**

**Bankruptcy No. 381–00104.**
**Adv. No. 381–0143.**

United States Bankruptcy Court, C.D. Illinois.

May 16, 1983.

G. Bradley Hantla, Ltd., Litchfield, Ill., for Litchfield Nat. Bank, a nat. banking corp.

D. Bradley Blodgett, Gillespie, Cadigan & Gillespie, Springfield, Ill., for Borg-Warner Acceptance Corp.

## OPINION AND ORDER

BASIL H. COUTRAKON, Bankruptcy Judge.

This matter comes for hearing on a Reclamation Petition filed by the Litchfield National Bank (hereinafter the bank) requesting the proceeds of the sale of certain property held by the debtors, Gerald Dean and Nancy Katherine Hart, at the filing of their Petition in Bankruptcy. Both the bank and Borg-Warner claim the proceeds by reason of perfection and/or filing under Illinois law.

On May 7, 1977 the debtors executed a security agreement with the bank that granted "all inventory and equipment now owned and hereafter acquired, including but not limited to appliances." (Bank exhibit 2) The debtors warranted and covenanted that the collateral was acquired and used primarily for "consumer goods" by placing an "x" in a box in paragraph 2. Further, the debtors indicated that the collateral would be kept at 706 S. Van Buren, Litchfield, Montgomery County, Illinois. The Van Buren address was the debtors' home address at that time as they had yet to establish business premises.

A U.C.C.–1 was recorded with the Secretary of State on May 17, 1977 covering "all inventory and equipment now owned and hereafter acquired, including but not limited to appliances." The Van Buren address was listed. (Bank exhibit 5)

Later, when the debtors were placed on a different payment schedule, a new security agreement was drafted on December 20, 1978 that granted the bank a security interest in "one 1977 Dodge ... Pickup Truck... All inventory now owned and hereafter acquired, including but not limited to: televisions, stereo equipment, dryers, washers, freezers, refrigerators, ranges, ovens, hot water heaters, and appliances; and equipment and tools used to repair same." (Bank exhibit 3). In this agreement the debtors indicated the collateral was used primarily for "business" by placing an "x" in a box in paragraph 2. The address was listed as 211 N. State in Litchfield.

A U.C.C.–1 was filed with the Secretary of State on December 26, 1978 listing all of the property on the security agreement with the exception of the pick-up truck. Hart's address was indicated as 815 E. South St., Litchfield on this form.

In April, 1979 the debtors applied for inventory financing with Borg-Warner. A standard form "Security Agreement and Power of Attorney" was signed on April 25, 1979 granting Borg-Warner security in "... inventory of goods now owned or hereafter acquired..." (Bank exhibit 7).

Afterwards on May 1, 1979 Borg-Warner commenced its search for other liens by requesting that the Secretary of State conduct a search for Gerald D. Hart d/b/a Jerry's T.V. & Appliance, 211 W. State, Litchfield. (Bank exhibit 6) As the search was not conducted in person by Borg-Warner, but by the Secretary of State, the fact that a different address was listed on the search form could have meant a complete miss. The Secretary of State's Office reported only a Finance America lien at that address, but did find and note a variation:

Note: Also have on file
Hart, Gerald D. 706 S. Van Buren, Litchfield, Il.

(Bank exhibit 6) The Court does not find any mistake by the Secretary of State.

No additional search, however, was ordered conducted for this Van Buren address. Nevertheless Borg-Warner's manager, Robert Kindred, wrote "old location" on the search form next to the notation of the Van Buren address after speaking with Hart. (Bank exhibit 6) The record does not disclose that Hart and Kindred had any further discussion about the "old location." In any case the address of the bank's filing was called to Borg-Warner's attention as a further address worthy of inquiry. (Borg-Warner exhibit 4).

■ Borg-Warner has claimed that it was led astray by a financial statement from the debtors that failed to list the bank's interest (Bank exhibit 7) and by the bank's response to a Borg-Warner letter requesting a resume of its experience with the debtors. (Bank exhibit 9). Nonetheless, the purpose of the state filing system is to avoid confusion and should be the method upon which secured parties depend. A false or incomplete financial statement might be worthy of a separate action. In addition, the standard response the bank gave to the letter, that did not specifically request liens, was hardly meant to defraud Borg-Warner.

The first issue the Court must address is whether or not the bank had properly perfected secured liens.

■ The Court does not find the May 7, 1977 Security Agreement to be confusing. The mere fact that a box labeled "consumer goods" was checked does not detract from the clear language of grant. It is the grant of value in certain named property that is important for the U.C.C. (Ill.Rev.Stat.1981, ch. 26, par. 9–203).

In this regard, Borg-Warner's *Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700 (10 Cir.1972) is directly on point. The Court, however, concludes that the correct proposition for which that case stands is that the typed language of grant is more important than the blocks which merely classify collateral for filing purposes.

■ In any case what minimal confusion was caused by checking an incorrect box should not cause a party conducting a search to be misled about the articles in which the secured party has an interest. Similarly, the Court is not so uncertain as to require parol evidence for an explanation. Thus the Court finds that the May 7, 1977 security interest properly attached and, with the May 17, 1977 filing, created a perfected security interest in inventory and equipment.

■ The December 20, 1978 security agreement has been attacked for lack of *new* value given. The Court finds no merit to this argument. "Value" for the purposes of 9–203(1)(b) (Ill.Rev.Stat.1981, ch. 26, par. 9–203(1)(b)) is defined in 1–201(44)(b) (Ill. Rev.Stat.1981, ch. 26, par. 1–201(44)(b)) "as security for or in total or partial satisfaction of a pre-existing claim...". Further there *was* new value given. The 1977 Dodge pickup truck was an additional item listed in the 1978 agreement that was not in the 1977 agreement. Thus, the Court finds that the December 20, 1978 filing created a perfected security interest in inventory and equipment.

■ The second issue is whether or not Borg-Warner should prevail over the perfected security interest of the bank.

The only statutory authority available to Borg-Warner is found in 9–312(3). (Ill.Rev. Stat.1981, ch. 26, par. 9–312(3)) That section would give Borg-Warner, a holder of a perfected purchase money security interest in inventory, priority only to the inventory and only if, *interalia,* it sends notice to the bank pursuant to subparagraph (b). No notice was sent. Hence the Court cannot give Borg-Warner a priority over the bank.

The matter is no more complicated than that. This Court cannot interfere with the properly perfected security interest of the bank without state statutory authority. To claim that equity is on the side of Borg-Warner is contrary to the facts. No evidence was presented showing that the Secretary of State made an error. Also, the law *does* seek to protect inventory financers

against "unjust enrichment" by conflicting security interests. Yet that law was not followed here because of the lack of diligence in searching for those conflicting interests.

The Court hereby ORDERS that the trustee turnover the proceeds from sale of the equipment and inventory to the Litchfield National Bank.