In re Franklin D. CONARD, Debtor.

Edward B. HOPPER II, Trustee in Bankruptcy for Franklin D. Conard, Plaintiff,

v.

UNITED STATES of America, Farmers Home Administration, Defendant.

Bankruptcy No. IP 83–2412.
Adv. No. 84–81.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

Sept. 12, 1984.

---

Edward B. Hopper, II, Indianapolis, Ind., Trustee.

Gary Lynn Hostetler, Indianapolis, Ind., for trustee.

Jeffrey L. Hunter, Asst. U.S. Atty., Indianapolis, Ind., for the Farmers Home Administration.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY ON COMPLAINT TO RECOVER PREFERENTIAL TRANSFER

NICHOLAS W. SUFANA, Bankruptcy Judge.

This matter came on before the court on June 11, 1984 for hearing upon the Complaint to Recover Preferential Transfer filed on February 10, 1984 by Edward B. Hopper, II, Trustee in Bankruptcy for Franklin D. Conard, the Debtor. Summons and Notice of Trial issued on March 5, 1984. Notice of the June 11, 1984 hearing date was imparted to the parties by the court's Order on Motion for Continuance of Trial issued on March 20, 1984. On April 4, 1984, the Defendant, United States of America, Farmers Home Administration (hereinafter "FmHA") filed its Answer.

At the hearing, the Trustee appeared by counsel, Gary Lynn Hostetler. FmHA appeared by counsel, Jeffrey L. Hunter. At the conclusion of the hearing, the Trustee was requested to submit a post-hearing brief by July 11, 1984, and FmHA was requested to submit a reply brief within 15 days thereafter. The Trustee filed a Memorandum of Law on July 18, 1984. FmHA filed a Response to Plaintiff's Memorandum of Law on August 1, 1984. In addition, FmHA had filed a Brief of United States of America on July 11, 1984.

And the court, having examined the record and the evidence, having considered the arguments of the parties, and being duly advised in the premises, now enters its findings of fact:

## FINDINGS OF FACT

1. On June 16, 1983, the Debtor, Franklin D. Conard, filed a voluntary petition seeking relief pursuant to Chapter 7 of the Bankruptcy Code.

2. On August 25, 1978; March 27, 1980; May 8, 1981; and May 7, 1982, the Debtor signed separate documents, prepared on identical forms supplied by FmHA, entitled "Security Agreement (Chattels and Crops)." Each such Security Agreement was signed in conjunction with a corresponding Promissory Note executed by the Debtor in favor of FmHA. A financing statement was prepared and recorded in connection with each Security Agreement.

3. Edward Roy Tam, a representative of FmHA, dealt with the Debtor in the processing of the aforementioned loans and the preparation of the Security Agreements. The court finds that Mr. Tam explained to the Debtor FmHA's rights as a result of the signing of the note, mortgage, and security agreement, which rights included the right to force a sale of the

**542**

property, both real and personal, and the right to seize the personal property.

4. Within the 90-day period preceding the filing of bankruptcy, the Debtor transferred the sum of $20,000.00 to FmHA, said funds representing proceeds from the sale of cattle owned by the Debtor.

5. Copies of the subject Security Agreements were admitted into evidence at the hearing on June 11, 1984, as Defendant's Exhibit 1, and are as follows:

(H. I.)

6. The Security Agreements do not contain express words of grant or a granting clause.

7. Subsequent to the execution of the latest Security Agreement that is at issue herein, FmHA revised its Security Agreement form to include the following statement:

"DEBTOR HEREBY GRANTS to Secured Party a security interest in debtor's interest in the following collateral, including the proceeds and products thereof ..."

8. The Trustee has brought the instant action to recover the $20,000.00 paid by the Debtor to FmHA within 90 days preceding the filing of bankruptcy as a voidable preference. The Trustee contends that the subject Security Agreements fail to include language sufficient to create a security interest in favor of FmHA. In particular, the Trustee argues that no security interest was intended to be transferred because of the lack of a granting clause in the instruments. Additionally, the Trustee claims that the Debtor did not in fact intend to transfer a security interest to FmHA and did not understand the legal implications of such a transfer. The Trustee concedes that if the Security Agreements are found by the court to have been effective in transferring a security interest to FmHA, the Trustee's preference action fails.

Whereupon, the court now enters its conclusions of law:

CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. § 157(b), as added by Sec. 104 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, 98 Stat. 333. The instant proceeding is a "core proceeding" to determine, avoid, or recover a preference. 28 U.S.C. § 157(b)(2)(F). At the time of the hearing, the court was exercising its jurisdiction pursuant to 28 U.S.C. § 1471 and the Emergency Local Rule adopted by the United States District Court for the Southern District of Indiana on December 3, 1982, as modified by order dated January 7, 1983, and as readopted on April 2, 1984.

2. Pursuant to the Uniform Commercial Code as adopted in Indiana four elements are generally required for the creation of an enforceable security interest as follows:

(1) There must be an agreement creating or providing for a security interest.

(2) The debtor must have signed a security agreement containing a description of the collateral; or the security party must acquire possession of the collateral.

(3) The debtor must acquire rights in the collateral.

(4) And, the secured party must give value.

*Kruse, Kruse & Miklosko v. Beedy,* 170 Ind.App. 373, 407, 353 N.E.2d 514, 535 (1976); IND. CODE 26–1–9–203(1); IND. CODE 26–1–9–204.

3. IND. CODE 26–1–9–105(1)(h) states that "a 'security agreement' means an agreement which creates or provides for a security interest." IND. CODE 26–1–1–201(37) defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation." An "agreement" is defined as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in the Act." Finally, the term "contract" is defined as "the total legal obligation which results

from the parties' agreement as affected by the Act and any other applicable rules of law." IND. CODE 26–1–1–201(11)."

■ 4. The court is in accord with those cases that adopt the prevailing view that no express words of grant, or "magic words," are required in order to make a security agreement effective to transfer a security interest to a party, so long as the minimum statutory requirements are met. *See, e.g., Mitchell v. Shepherd Mall State Bank,* 458 F.2d 700 (10th Cir.1972).

■ 5. The court has closely examined the Security Agreements at issue herein and finds that the language used therein clearly manifests the intention of the parties that a security interest be created in favor of FmHA. There are numerous references to "security agreement", "security interest", and "secured party." Illustrative but not exhaustive are the phrases "Debtor is justly indebted to Secured Party"; "this instrument shall secure payment of the note"; "Debtor will defend the collateral"; "Debtor will pay promptly when due all indebtedness evidenced by the note and any indebtedness to Secured Party secured hereby"; and "it is the purpose and intent of this instrument that, ..., this instrument shall secure payment of the note."

6. In addition, the court finds that, viewed objectively, a meeting of the minds took place, and the Debtor intended to give FmHA a security interest in the property that is identified as the collateral in the Security Agreements. This being a commercial transaction, the issue whether there was a meeting of minds is to be determined by the use of objective standards. *See, Indiana Bell Telephone Co., Inc. v. Mygrant,* Ind.App., 441 N.E.2d 481 (1982). The facts are that the Debtor borrowed money from FmHA repeatedly, the Debtor repeatedly signed documents entitled Security Agreement in connection with these transactions, and the Debtor was advised of the consequences of signing the Security Agreements by Mr. Tam.

7. The fact that FmHA subsequently revised its security agreement form to include express words of grant is not relevant to the issue of whether the Security Agreements at issue herein contained language legally sufficient to create a security interest in favor of FmHA.

8. The law is with the Debtor and against the Trustee.

### ENTRY

On the basis of the foregoing findings of fact and conclusions of law, it is ORDERED, ADJUDGED, AND DECREED that the Trustee take nothing by way of his Complaint, it having been found that FmHA had a valid and perfected security interest in the proceeds of the sale of the Debtor's cattle, and that the transfer of those proceeds to the FmHA did not constitute an avoidable preference.