94 B.R. 18 (1988)
In The Matter Of John H. HILLMAN, Debtor.
Thomas M. GERMAIN, Trustee, Plaintiff,
v.
GREATER WATERTOWN FEDERAL CREDIT UNION, Defendant.
Bankruptcy No. 2-88-00693, Adv. No. 2-88-0084.
United States Bankruptcy Court, D. Connecticut.
November 30, 1988.
*19 Thomas M. Germain, Hartford, Conn., for plaintiff-trustee.
Maureen S. Caine, Grady & Riley, Waterbury, Conn., for defendant.

MEMORANDUM OF DECISION
ROBERT L. KRECHEVSKY, Chief Judge.

I.
The issue in this adversary proceeding, brought by a chapter 7 trustee to avoid a lien on an automobile, is whether the defendant's loan transaction papers are sufficient to provide for or create a security interest in the automobile. The parties have submitted the matter to the court upon a stipulation of facts and briefs.

II.
On June 17, 1987, John H. Hillman (debtor) borrowed $15,140.98 from Greater Watertown Federal Credit Union (defendant) to purchase a 1987 Ford Taurus automobile. The debtor, on that date, signed a form prepared by the defendant entitled, "Closed-End Note, Disclosure Statement and Security Agreement" (document). One part of the document, after setting forth the amount financed, the interest rate and term of the loan, contained the following clause:
 Security: I am giving a security interest
 in:
  All present and future shares or
 deposits in any account(s) in which
 I have an interest at the credit
 union.
  The goods or property being purchased.
  My share account number
 ___________ ....
  other (description) _________.
Only the first box, referring to the shares or accounts with the defendant, is marked with an "X".
Toward the bottom of the document, outlined by a thin black line, was a section entitled "Description of Security Offered", which stated:
IF ONE OF THE BOXES BELOW IS CHECKED, I ALSO PLEDGE AS SECURITY WHAT IS DESCRIBED BELOW
 A security interest under the Uniform Commercial Code in __________.
 A security interest as a pledge in my share account __________. . . .
 Other (type-description) _________.
Nothing in this section was filled in.
The document, at the top in a section outlined by a thin black line, provided that if the signer of the document "obtain[s] an advance secured by a motor vehicle or other property", he "must obtain" certain fire, theft and collision insurance with an endorsement *20 naming the defendant as loss payee. Following the words "Make", "Model", "Year", and "Serial No.", the words "Ford", "Taurus", "1987" and "1FABP52U0HA207887" were correspondingly typed.
The document set forth the sum of "$14,554.50" as the "Amount given to me & Stephen Ford" in a part of the document showing an "Itemization of the Amount Financed." The defendant issued a check dated June 17, 1987, payable to John H. Hillman and Stephen Ford, Inc. in the amount of $14,554.50. The check contained the following endorsement:
By endorsement, owner or dealer agrees to register as first lien holder on title, the Greater Watertown Federal Credit Union. Failure to do so could result in subrogation against dealer.
Serial # 1FABP52U0HA207887
The check was endorsed by Stephen Ford, Inc. only.
The Connecticut Motor Vehicle Department, on August 21, 1987, issued a certificate of title which lists the debtor as the person registering the vehicle, the defendant as the holder of a first lien dated June 17, 1987, and Stephen Ford, Inc., as the seller.
On August 1, 1988, the trustee filed a complaint under 11 U.S.C.A. § 544 (West Supp.1988)[1] to challenge the validity of the defendant's lien, contending that the document fails to grant the defendant a security interest in the debtor's automobile. The defendant claims that the facts established by the stipulation are sufficient to defeat the trustee's complaint.

III.
In general, an enforceable security interest in a motor vehicle under Connecticut statutes results from the execution of a security agreement and the issuance of a certificate of title by the Commissioner of Motor Vehicles showing the name and address of the lien holder and the date of the security agreement. Conn.Gen.Stat. §§ 14-174(a), 14-185(a) (1987). Conn.Gen. Stat. § 42a-9-105(1)(l) defines a "security agreement" to mean "an agreement which creates or provides for a security interest. . . ." Section 42a-9-203(1) provides that a security agreement will not be enforceable against the debtor or third parties unless, inter alia, "the debtor has signed a security agreement which contains a description of the collateral. . . ." The description of the collateral will be sufficient, pursuant to § 42a-9-110, "if it reasonably identifies what is described", whether or not the identification is specific.

IV.

A.
The defendant argues that the loan proceeds check, the certificate of title and the document, in combination, constitute a security agreement sufficient to create a security interest in the automobile. See Laurel Bank & Trust Co. v. Mark Ford, Inc., 182 Conn. 437, 438 A.2d 705 (1980) (several documents, all signed by the debtor, may, taken together, constitute the execution of a security agreement). Since neither the certificate of title nor the loan proceeds check was signed by the debtor, they cannot be considered as meeting the requirements of § 42a-9-203(1). Pontchartrain State Bank v. Poulson, 684 F.2d 704, 706-07 (10th Cir.1982) (Section 9-203 of the Uniform Commercial Code specifically requires that any document sought to be utilized to establish a security agreement must be signed by the debtor.) Accordingly, the question of whether a security interest in the automobile was created turns solely on whether the document, by itself, satisfies § 42a-9-203(1) by identifying the automobile as the collateral.

B.
The defendant contends that "the inclusion of the description of the collateral on [the insurance] part of the [document] demonstrates the intent of the Debtor to *21 offer the automobile as security as does the `Itemization of the Amount Financed' on the [document] which shows the proceeds going to the Debtor and Stephen Ford, the dealer from whom the automobile was purchased." Defendant's Brief 3. The official comments to Uniform Commercial Code § 9-203 state, "The formal requisite of a writing stated in [§ 9-203(1)] is not only a condition to the enforceability of a security interest against third parties, it is in the nature of a Statute of Frauds." Official Comment 5 to U.C.C. § 9-203. The issue, therefore, is not one of speculation on what the parties may have intended to accomplish, but, rather, whether they have complied with the conditions established by statute for the creation of a valid security interest.
Mitchell v. Shepherd Mall State Bank, 458 F.2d 700 (10th Cir.1972), is a holding most directly in point. In Mitchell, the debtor signed a security agreement containing two clauses, roughly comparable to the clauses involved in the present matter. In one clause, the debtor in Mitchell granted a security interest in certain equipment. In another clause, the security agreement stated "Classify goods under (one or more of) the following Uniform Commercial Code categories", followed by a list of five types of collateral: "Consumer Goods", "Equipment", "Inventory", "Accounts Receivable", and "Contract Rights." Except for "Consumer Goods", all boxes next to each of these types of collateral were checked. The assignee of the secured party sought to enforce a security interest in the debtor's inventory, accounts receivable and contract rights, in addition to the debtor's equipment, relying on the "classify goods" clause. The Tenth Circuit held that the security agreement provided for a security interest in the equipment only. The court stated that words of grant must be used to create a security interest, and the section of the security agreement in which the goods were classified lacked words of grant. Consequently, a security interest attached only to the equipment, i.e., to the collateral in which a security interest expressly was granted. The court reasoned, "While Article 9 of the Uniform Commercial Code has stripped the formal requirements for creation of a security interest to the bone, certain minimal requirements must still be observed." Mitchell, 458 F.2d at 703; accord In re Swearingen (American State Bank v. Swearingen), 27 B.R. 379 (Bankr.D.Kan.1983); H & I Pipe and Supply Co. v. First Nat'l Bank (In re H & I Pipe and Supply Co.), 44 B.R. 949 (Bankr.M.D.Tenn.1984).
In the present matter, in the only clause containing any words of grant, the debtor gave a security interest in "[a]ll present and future shares or deposits in any account(s) in which I have an interest at the credit union." Like Mitchell, the description of an automobile in the insurance section of the document would not create a security interest in the vehicle because of the total absence from that section of words of grant.

V.
The plaintiff has established that the papers signed by the debtor in connection with his loan transaction with the defendant do not provide for or create a security interest in the 1987 Ford Taurus automobile. Judgment will enter avoiding the lien claimed by the defendant.
NOTES
[1] Section 544 of the Bankruptcy Code, "the strong arm clause", gives a bankruptcy trustee the power to avoid transfers that a creditor holding a judicial lien or an unsatisfied writ of execution, or a bona fide purchaser of real property would have.