**In re R. & L. CARTAGE & SONS, INC., Debtor.**

**Mark A. WARSCO, Trustee, Plaintiff,**

v.

**SCHALLER TRUCKING CORPORATION, Defendant.**

**Bankruptcy No. 86–10774. Adv. No. 89–1039.**

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Aug. 21, 1990.

Mark A. Warsco, Fort Wayne, Ind., for plaintiff.

Stephen M. Gentry, Indianapolis, Ind., for defendant.

### DECISION & ORDER ON MOTION FOR SUMMARY JUDGMENT

ROBERT E. GRANT, Bankruptcy Judge.

By its complaint in this adversary proceeding the plaintiff/trustee seeks to avoid a security interest the defendant claims to hold against property of the estate. Additionally, pursuant to § 542, the trustee seeks to compel the defendant to turn this property over to the trustee or to account for its value.

The matter is now before the court on defendant's motion for summary judgment. The motion requires the court to determine two issues. First, did defendant have a security interest in property of the debtor and second, whether the two year statute of limitations imposed by § 549(d)(1) bars the trustee's action.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Bankr.Rule 7056(c). Thus, summary judgment is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In ruling on a motion for summary judgment, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or credibility of the witnesses. *Anderson,* 106 S.Ct. at 2511.

Applying this standard to defendant's motion persuades the court that the motion for summary judgment should be denied.

Based upon the materials which were submitted in connection with the motion for summary judgment, when viewed in the light most favorable to the plaintiff/trustee, the essential facts relevant to the court's determination appear to be as follows:

Beginning in 1977 and continuing until August 20, 1986, the debtor was an agent/fleet operator for the defendant, servicing one of defendant's customers. Under this arrangement, the debtor would provide the drivers and equipment necessary to service the customer in return for a percentage of the freight charges paid.

Prior to January 23, 1986, the debtor was the record owner of fifteen semi trailers and seven truck tractors. This equipment is the subject of the Trustee's action.

On January 23, 1986, Schaller loaned the debtor the sum of $222,439.00. To secure this loan, under an oral agreement, debtor transferred title to the equipment to the defendant. The titles · were processed through the Indiana Bureau of Motor Vehicles, which issued certificates of title in the defendant's name. The loan was to be repaid through a deduction from the weekly revenue checks paid by the defendant to the debtor. Upon repayment, the defendant was to transfer title to the equipment back to the debtor.

Debtor and defendant also entered into written lease agreements by which defendant leased at least three of the tractors from the debtor. The fifteen trailers were also leased by the debtor to Schaller upon the same terms, under an oral agreement. The leases required the debtor, as lessor, to provide all of the fuel, oil, and repairs needed to operate the vehicles and maintain them in the proper condition. Although the leases provided that the equipment shall be and remain in the exclusive possession and under the complete control of the defendant, the drivers were employees of the debtor subject only to the requirement that before being hired they had to be qualified by the defendant. When the equipment was not actively in use, it was apparently kept at one of the debtor's terminals which are located in Fort Wayne and Bedford, Indiana.

On August 20, 1986 debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

After the petition was filed, between August 20, 1986 and August 30, 1986, representatives of the defendant removed the equipment from the debtor's Fort Wayne and Bedford terminals. Following this removal, some of the items were scrapped, based upon the defendant's decision that they were worthless. Schaller did, however, sell three of the tractors. The precise dates upon which it did so do not appear from the motion. Sometime in 1989 Schaller sold the fifteen trailers to Emerson Transportation, Inc. for $500.00 each.

On or about March 20, 1988, the debtor's Chapter 11 bankruptcy was converted to Chapter 7 and the Plaintiff, Mark A. Warsco, was designated and qualified as the trustee.

This action was initiated by the plaintiff's complaint on March 14, 1989, which originally named defendant's president, John V. Loudermilk, as the sole defendant. An amended complaint was filed on September 27, 1989, joining Schaller Trucking Corporation as a defendant. Mr. Loudermilk was subsequently dismissed on the plaintiff/trustee's motion.

At no time does it appear that defendant ever sought or obtained relief from the automatic stay. The property in question has never been abandoned in accordance with the requirements of the Bankruptcy Code.

■ In support of its motion for summary judgment the defendant contends that it

was not the recipient of a preferential transfer because its security interest in the equipment was perfected when the State of Indiana issued certificates of title showing it as the owner. Assuming that a security interest in a motor vehicle can be properly perfected in this fashion, defendant's argument still fails. Perfection alone is not enough to create an enforceable security interest.

Article 9 of the Uniform Commercial Code applies to any transaction, regardless of its form, which is intended to create a security interest in personal property. I.C. 26–1–9–102. "This section makes clear that Article 9 of the U.C.C. is intended to exclusively govern all manner of secured transactions ..." *Aetna Finance Co. v. Hendrickson*, 526 N.E.2d 1222, 1226 (Ind. App.1988). The draftsmen "intended that its provisions should not be circumvented by manipulations of the locus of title." *First National Bank of Elkhart County v. Smoker*, 153 Ind.App. 71, 286 N.E.2d 203, 208–209 (1972). Thus, its provisions concerning the rights and duties of the parties apply regardless of whether title to the collateral is in the secured party or in the debtor. I.C. 26–1–9–202. In order to have obtained a security interest (perfected or otherwise) in the equipment, defendant was required to comply with the requirements of Article 9.

■ "While Article 9 of the Uniform Commercial Code has stripped the formal requirements for creation of a security interest to the bone, certain minimal requirements must still be observed." *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 703 (10th Cir.1972). These requirements are found at section 9–203 which provides:

a security agreement is not enforceable ... unless:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral.... I.C. 26–1–9–203(1)(a).

Thus, unless the secured party is in possession of the collateral, in the absence of a written security agreement there is no se-

curity interest that is capable of being enforced against anyone. *White v. Household Finance Corp.*, 158 Ind.App. 394, 302 N.E.2d 828, 837 (1973). Defendant fails to fulfill either requirement.

■ Absent the lender's possession, the creation of an enforceable security interest requires the debtor to sign a written security agreement containing a description of the collateral. *International Harvester Credit Corp. v. Pefley*, 458 N.E.2d 257, 260 (Ind.App.1983); *Kruse, Kruse & Miklosko, Inc. v. Beedy*, 170 Ind.App. 373, 353 N.E.2d 514, 535 (1976). "More harm than good would result from allowing creditors to establish a secured status by parol evidence after they have neglected the simple formality of obtaining a signed writing." *White*, 302 N.E.2d at 837. A security agreement is one which "creates or provides for a security interest." I.C. 26–1–9–105(1)(*l*). No "magic words" are necessary to create this interest. *Mitchell*, 458 F.2d at 703; *In re Conard*, 43 B.R. 540, 543 (Bankr.S.D.Ind.1984). Nonetheless, the agreement "must contain language which specifically creates or grants a security interest in the collateral described." *Mitchell*, 458 F.2d at 703. This language must be such that it "leads to the logical conclusion that it was the intention of the parties that a security interest be created." *Id.*

■ Defendant may not rely upon its oral agreement with the debtor to assert an enforceable security interest against the equipment. There is no written agreement containing a description of the collateral which would have created such an interest. The applications for title, although signed by the debtor and describing the equipment, do not fulfill the requirements of a written security agreement. *White*, 302 N.E.2d at 836. Neither do the three written leases. Nothing in them indicates that they are anything other than leases. Although the defendant and debtor might have orally agreed that Schaller would have a lien on the equipment until the January, 1986 loan had been paid, there is no written agreement, signed by the debtor, which manifests an intention to create

such an interest. In the absence of such an agreement, even though the requirements for perfection might have otherwise been fulfilled, no security interest exists. *White*, 302 N.E.2d at 837. Perfection by itself accomplishes nothing.

■ The one exception to the requirement that a security agreement must be in writing is where the secured party has possession of the collateral. This requires "actual physical possession." *In re Baker*, 54 B.R. 743, 745 (Bankr.E.D.Tenn.1985). *See also Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377, 381 (10th Cir.1975). Possession must be "unequivocal, absolute, and notorious." *Transport Equipment Co.*, 518 F.2d at 381. Exclusive possession should pass to the creditor and "[t]here should be some line of demarcation that clearly indicates possession is not in the debtor or has changed its previous posture." *In re Chuning*, 70 B.R. 98, 101 (Bankr.W.D.Mo. 1987). Possession which is merely "symbolic" is not sufficient. *Transport Equipment Co.*, 518 F.2d at 381.

■ The best that can be said for the defendant's claim to possession of the equipment is that it was merely symbolic. Although the lease agreement gave it the right to the exclusive possession and control of the property, in actual practice it seems that defendant's exercise of this right was only theoretical. Physical possession did not pass to the defendant and there is no clear line of demarcation that indicates possession had changed its previous posture. After January 23, 1986, the debtor continued to use and operate the equipment just as it had prior to that date. The equipment was used and operated by employees of the debtor and it was the debtor who bore the responsibility for paying the normal operating costs and providing the repairs needed to keep the equipment in proper operating condition. When not in use, the equipment seems to have been located not with the defendant but rather at the debtor's trucking terminals in Fort Wayne and Bedford. Indeed, on the date of the petition for relief, the property was located at these terminals and it is from these terminals that the defendant removed the equipment when it took possession of it. Under these circumstances it cannot be said that defendant had possession which was sufficiently unequivocal, absolute, and notorious so that it could avoid the requirement of a written security agreement.

Defendant next argues that, regardless of whether or not it had a perfected security interest in the equipment, the trustee's complaint is barred by the two year statute of limitations imposed by § 549(d)(1). Section 549 of the United States Bankruptcy Code permits the trustee to avoid unauthorized post-petition transfers of property of the estate. Such an action or proceeding may not be commenced after the earlier of "two years after the date of the transfer sought to be avoided." 11 U.S.C. § 549(d)(1). Since the trustee's adversary proceeding was not initiated until March of 1989 and the defendant took possession of the equipment in August of 1986, defendant contends that the complaint is time-barred. This argument too must fail.

The debtor's petition for relief under Chapter 11 created the automatic stay of § 362. This stay is incredibly broad and prohibits

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

11 U.S.C. § 362(a)(3) & (4).

The whole purpose of this stay is to prevent creditors from dismembering the bankruptcy estate. *In re Garcia*, 109 B.R. 335, 337 (N.D.Ill.1989). "[A]ny action taken in violation of the stay is void and without effect." *Ellis v. Consolidated Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir.1990) (citing *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345, 84 L.Ed. 370 (1940)). *See also In re Shamblin*, 878 F.2d 324 (9th Cir.1989).

■ The equipment was indisputably property of the bankruptcy estate. Consequently, by taking possession of this property after the date of the petition and then

proceeding to sell or otherwise dispose of it, defendant violated the automatic stay.

■ A careful distinction must be drawn between the post-petition transfers condemned by § 549 and actions taken in violation of the automatic stay. This distinction is the difference between actions which are merely unauthorized and actions which are specifically prohibited by the Bankruptcy Code. The District Court for the Northern District of Illinois recognized the importance of this distinction. *See In re Garcia*, 109 B.R. at 338–40. After considering the policies and purposes behind both § 549 and § 362, the Court concluded:

> There is no reason to distinguish between violations of the automatic stay based upon their age.
>
> \* \* \* \* \* \*
>
> [T]o the extent any inconsistency may exist between an interpretation of § 362(a) as making actions in violation of the automatic stay void and § 549, the court concludes that fundamental importance of the automatic stay to the purposes sought to be accomplished by the Bankruptcy Code requires that acts in violation of the automatic stay be void, rather than voidable. Concluding that acts in violation of the automatic stay were merely voidable would have the effect of encouraging disrespect for the stay by increasing the possibility that violators of the automatic stay may profit from their disregard of the law, provided it goes undiscovered for a sufficient period of time. This may be an acceptable risk to some creditors when measured against a delayed prorata distribution.
>
> Acts in violation of the automatic stay imposed by § 362(a) are void ab initio. § 549(d)'s restriction on the time period within which a trustee may avoid post petition transfers does not apply to the trustee's challenge of actions specifically prohibited by § 362(a), but only to actions challenging post-petition transfers authorized only by §§ 303(f) or 542(c) or not otherwise authorized by the Bankruptcy Code or court order. *Garcia*, 109 B.R. at 340.

Consequently, where a creditor acts in direct violation of the automatic stay of § 362, it may not seek refuge behind § 549(d) when it is eventually called upon to account for its misconduct. There is no statute of limitations upon actions which seek to remedy violations of the automatic stay. *In re Elliott*, 81 B.R. 460, 463 (Bankr.N.D.Ill.1987).

The *Garcia* Court's conclusion is supported not only by the delicate inter-relationship between § 549 and § 362 but also by the trustee's powers under § 542. Pursuant to § 542(a),

> an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under § 363 of this title ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. 11 U.S.C. § 542(a).

Unlike many of the other powers which the Bankruptcy Code gives to a trustee, Congress did not impose a statute of limitations with regard to actions under § 542. Historically turnover actions having never been viewed as being restricted by a statute of limitations. *See Berman v. Provencher*, 614 F.2d 823, 825 (1st Cir.1980). *In re Ward*, 60 B.R. 660, 663 (Bankr.W.D. La.1986); *In re De Berry*, 59 B.R. 891, 898–99 (Bankr.E.D.N.Y.1986). *See also In re Bookout Holsteins, Inc.*, 100 B.R. 427, 432 (Bankr.N.D.Ind.1989).

The equipment was not of inconsequential value or benefit to the bankruptcy estate and it is certainly property that the trustee was entitled to use, sell, or lease. During the course of this case, defendant was, by its own admission, in possession, custody, or control of property of the estate. As a result, it had an affirmative duty to deliver this property to the trustee and must account to the trustee for its value.

We must also remember that it is not only the defendant's action of taking possession of the equipment which the trustee challenges, but also defendant's actions in subsequently selling or disposing of it.

The petition for relief under title 11 created the bankruptcy estate, consisting of all property in which the debtor had an interest. 11 U.S.C. § 541. The mere change of possession was not, by itself, sufficient to terminate the estate's ownership of the equipment. It became and remained property of the estate "wherever located and by whomever held." 11 U.S.C. § 541(a). Thus, the equipment did not cease to be property of the estate when defendant took possession of it. Instead, the estate's interest in it continued unabated, notwithstanding defendant's possession. Consequently, when defendant sold or otherwise disposed of these items, it was selling or disposing of property of the estate.

Even if the court were to accept defendant's argument that the trustee's action was subject to the time limitations of § 549(d), it is not altogether clear that the complaint is untimely. Although the defendant obtained possession of property of the bankruptcy estate in August of 1986, it was not until much later that this property was disposed of. The tractors were sold or scrapped on various unknown dates and it was not until 1989 that the trailers were sold. Although possession may have taken place more than two years prior to the complaint, the ultimate sale or disposition appears to have taken place within the two years prior to the date the action was brought.

For all of the foregoing reasons, defendant's motion for summary judgment is denied.

SO ORDERED.