579 P.2d 1115

EMPIRE MACHINERY COMPANY, an Arizona Corporation, Appellant,

v.

UNION ROCK & MATERIALS CORPORATION, an Arizona Corporation, Appellee.

No. 1 CA–CIV 3531.

Court of Appeals of Arizona, Division 1, Department B.

March 23, 1978.

Rehearing Denied April 27, 1978.

Review Denied May 31, 1978.

---

Lieurance, Wright & Davis, P. C., George S. Wright, Phoenix, for appellant.

Rawlins, Ellis, Burrus & Kiewit, Timothy C. Westfall, Phoenix, for appellee.

OPINION

OGG, Judge.

We are concerned in this appeal with the priority of security interests under the provisions of the Arizona Uniform Commercial Code.

The major issues presented are whether the plaintiff/appellee Union Rock & Materials Corporation (Union), had a perfected security interest and whether the defendant/appellant Empire Machinery Company (Empire), made an absolute assignment of its interest in the collateral.

The facts are not in dispute. On September 3, 1968, Empire, as lessor, and K & L Contracting Company, Inc., lessee, entered into a lease agreement and separate option to purchase equipment described as "1–New Caterpiller #12 Motor Grader, S/N 13K515." Empire perfected a security interest in the collateral by filing a financing statement on September 5, 1968.

On February 24, 1970, K & L exercised its option to purchase the motor grader it was leasing from Empire, pursuant to the agreement of September 3, 1968, and Empire and K & L entered into an installment sale security agreement covering this transaction. This interest was automatically perfected effective September 5, 1968, because the collateral was subject to the prior perfected security interest between Empire and K & L. A.R.S. §§ 44–3124 B, 44–3133 E (U.C.C. § 9–303(2)).

Four days earlier, on February 20, 1970, K & L entered into agreement with Union whereby Union was granted a security interest in all earth movers and other equipment items which K & L owned or in which it had an interest and which were located on K & L property. Union perfected this security interest on February 24, 1970.

On April 2, 1970, Empire transferred the February 24 installment sales security

agreement between itself and K & L to Arizona Bank, pursuant to a dealer's repurchase agreement. There is no evidence that the assignment provisions of that contract were executed. However, on May 14, 1970, Empire filed an Arizona Uniform Commercial Code Financing Statement Change—Form U.C.C.-3—which showed the Arizona Bank as assignee of the security agreement previously held by Empire.

On July 12, 1971, Empire entered into a second installment sales security agreement with K & L whereby K & L agreed to purchase some additional equipment. Included in the agreement was a provision affirming Empire's secured position in the caterpiller motor grader. Empire filed a financing statement on July 14, 1971, to perfect a security interest in this transaction.

The first installment sales agreement between Empire and K & L covering the motor grader was paid off by K & L to Arizona Bank on April 28, 1972. In early 1974 K & L defaulted on the second installment contract between it and Empire, and Empire took possession of the grader for the purpose of selling it at a public sale. Union executed a bond for $18,000 and took possession of the grader in May, 1974. Union then instituted an action to recover its money based on its security interest.

The trial court determined that 1) Union had perfected a valid security interest in the collateral on February 24, 1970, but it was inferior to that perfected by Empire on September 5, 1968; 2) Empire sold or assigned its interest to the Arizona Bank (April 2, 1970), and thus lost its preferred position; 3) Empire perfected a second security interest in the collateral (June 14, 1971), but it was inferior to the February 24 security interest held by Union; and 4) Union was entitled to possession of the collateral and return of its bond. Empire now appeals.

### DID UNION HAVE A VALID SECURITY INTEREST IN THE COLLATERAL?

We will first consider the issue of whether Union had a valid interest in the collateral. The prerequisite for creating a valid security interest is that it attach, or become enforceable, against the debtor. A.R.S. §§ 44–3116 and 44–3117 (based on U.C.C. § 9–203 and the comments thereto), provide that attachment occurs when there has been an agreement, value given, and the debtor has rights in the collateral. Those statutes also provide that the requirements of the agreement are that it 1) is written, unless the secured party takes possession of the collateral; 2) provides for a security interest; 3) is signed by the debtor; and 4) contains a description of the collateral. Empire's first contention is that the description of Union's collateral in the present case does not include the grader and thus the parties did not intend to create a security agreement in that equipment. The result, claims Empire, is that the required agreement that the grader be encumbered was not made and the interest did not attach. The description of the collateral reads:

> All earthmovers, blades, rollers, laydown machines, trucks, automobiles and pickup trucks owned by or in which the Debtor has an interest, and now located at Debtor's place of business at 861 South Center Street, Mesa, Arizona, or located on any of the Debtor's business sites.

We find this description sufficient and demonstrates a clear intent by Union and K & L to create a security interest in the grader. The Code requires only that the description reasonably identify the collateral A.R.S. § 44–3110; (U.C.C. § 9–110). The Code also provides that the purpose of the description is merely to give notice of a security interest and that further inquiry is necessary to obtain the exact information. U.C.C. § 9–402 Com. 2 (*See* A.R.S. § 44–3141.) Accordingly, courts generally take a liberal approach to the sufficiency of description. *See Adams v. Nuffer*, 550 P.2d 181 (Utah 1976).

Empire argues that the description does not satisfy the mandates of *Fuqua v. First National Bank of Howard*, 461 F.2d 1186

(10th Cir. 1972), which requires a description to indicate the type or describe the item of collateral. *Fuqua*, however, represents a different fact situation than the one before this court. In that case the court ruled that the description "all personal property" was insufficient. The decision was based in part on the applicable state statute which provided that descriptions must indicate the type or describe the collateral, and the case of *In Re Lehner*, 303 F.Supp. 317 (D.Colo.1969), which held that the description "consumer goods" was not sufficient. The description in the present case is not stated in the broad general terms as in *Fuqua* and *Lehner*. The type of activity for which a caterpiller motor grader is used is generally the same as that of an earthmover, blade, roller, laydown machine and truck. We find the description reasonably identifies the grader and evidences an intent to utilize all equipment of that type as collateral. Any ambiguity could have been eradicated by making reasonable inquiry based on the information contained in the financing statement. Courts have consistently held that the description of collateral is sufficient if it reasonably puts a third party on notice of an existing security interest so that inquiry can be made. *In re Drane*, 202 F.Supp. 221 (W.D.Ky.1962); *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 (1975). We hold, therefore, that the description of the collateral was sufficient to satisfy the requirement of an agreement and that Union did not overreach the agreed terms.

Empire's next contention is that at the time K & L entered into the agreement with Union, it did not have any rights in the collateral as required by A.R.S. § 44–3117 A (U.C.C. § 9–203(1)(c)), and, as a result, it was incapable of creating a security interest in it. The interest in the collateral which K & L had at the time of the agreement was a leasehold and an option to purchase. Empire argues that a leasehold is not a sufficient interest in which a security interest can be created and that an option to purchase is a contract right which does not give the debtor the rights in the collateral until the option is exercised.

A.R.S. § 44–3117 B(3). Since the option had not been exercised at the time of the agreement, Empire concludes that K & L, the debtor, had no authority to grant a security interest to Union.

■■ Regardless of Empire's contention that a leasehold is not a sufficient interest on which a security interest can be based, we hold that the option to purchase, when exercised, gives rise to a property right in which K & L could create a security interest. The Commercial Code does not require a party to have rights in the property *at the time the agreement is made*. The security interest merely remains unenforceable until all the events of attachment occur (agreement, value given and debtor has rights in the property). A.R.S. § 44–3117 (U.C.C. §§ 9–203, 9–204); J. White & R. Summer, Uniform Commercial Code 786 (1972). Similarly, the financing statement can be filed prior to the time of attachment but does not give a party priority rights until all the events of attachment have taken place. A.R.S. § 44–3124 A (U.C.C. § 9–303(1)). If the events of attachment have all occurred at some point in time, then Union had a valid security interest. Since there has been no contention that value was not given, the questions we must decide are whether there was an agreement that the interest attach and, if so, whether K & L, the debtor, at any time acquired rights in the property which was the subject of the agreement.

■ The facts indicate that Union and K & L made an agreement that the grader be subject to the security interest. As stated above, the written agreement contained an adequate description evidencing the parties' intent to encumber the type of equipment in which a motor grader is included. The agreement also stated it covered all such equipment which K & L owned or in which it had an interest, and was located on K & L property. By including a provision for equipment in which K & L had an interest, Union and K & L demonstrated an intent to include in the security agreement more than K & L owned outright. By limiting

the description to equipment located on K & L property, the collateral was limited to a specific group. Since K & L had a definite interest, an option to purchase, and the collateral was in the specified group, we think it clear that Union and K & L agreed that the specific grader in question was to be covered by the agreement.

Although Union and K & L intended the security agreement to include the grader, K & L's contract interest at the time of the agreement did not satisfy the requirement of rights in the property. However, because it was agreed to include the grader as collateral, the steps necessary to create a security interest were completed when K & L exercised the option to purchase and obtained the rights to the property. The record does not clearly indicate whether the filing of the financing statement or the exercise of the option occurred first, but when the last event occurred Union had a perfected interest. A.R.S. § 44–3124 A (U.C.C. § 9–303.)

## ASSIGNMENT

■ Although Union perfected a security interest in the grader in February, 1970, Empire had previously perfected an interest in the same collateral. Empire's interest had priority over Union's since it was perfected first. A.R.S. § 44–3133 D (U.C.C. § 9–312(5). The issue before this court is whether Empire assigned away its preferred position in the collateral in its transaction with Arizona Bank. If so, according to Union, at the time of the assignment Arizona Bank had first priority but as between Union and Empire, Union's interest is superior.

On May 14, 1970, Empire filed an Arizona uniform commercial code financing statement change—Form U.C.C.–3—which listed the Arizona Bank as the assignee of Empire's interest in the first installment sales security agreement entered into by Empire and K & L. However, the assignment provision of that contract was not executed, which casts some doubt on whether an assignment actually occurred. In any event, it has been held that the mere filing of a

U.C.C.–3 does not establish a substantive assignment when such an assignment was not intended by the parties. *In re King-Porter Co.*, 446 F.2d 722 (5th Cir. 1971). That decision coincides with the well established law that no particular words or forms are necessary for the creation of an assignment; instead, the court must look to the totality of circumstances to determine whether the assignor is divested of all control and right to the cause of action and the assignee is entitled to control and to receipt of the benefits from the contract. *Miller v. Wells Fargo Bank International Corp.*, 540 F.2d 548 (2d Cir. 1976); *McCowan v. Spencer*, 8 Cal.App.3d 216, 87 Cal.Rptr. 213 (1970); *Rivan Die Mold Corp. v. Stewart-Warner Corp.*, 26 Ill.App.3d 637, 325 N.E.2d 357 (1975). The crucial determination for this court is whether Empire and Arizona Bank intended an assignment.

We find that when viewed as a whole, the facts indicate an assignment was made. We note that the dealer's agreement between Empire and Arizona Bank provides that Empire shall from time to time sell, transfer, and *assign* to the bank contracts, including installment sale and security agreements, as the bank in its sole discretion shall elect. Pursuant to the contract, the bank paid the full value of the collateral, less unearned interest, to Empire for the contract. Also, according to the terms of the contract, Arizona Bank—not Empire—had the sole right to receive payment and effect settlement or compromise with K & L. In fact, K & L did pay off the contract to the Arizona Bank.

Another important factor indicating that an assignment had been made is that the dealer's agreement provided that all contracts purchased by Arizona Bank were to be without recourse except as to any contract which may become delinquent for a period of ninety days from the maturity of unpaid and delinquent installments due. This evidences that Empire did not retain any recourse in the collateral. Empire was thus divested of control as well as the benefits of the contract.

**150**

The main thrust of Empire's argument that no assignment was intended is that it remained loss-payee on the insurance policy covering the collateral. A bank representative testified that the bank usually becomes loss-payee of an assignment and he knows of no reason why it would not have been done in this transaction had an assignment been intended. While this fact lends support to Empire's argument, we do not think it outweighs the factors pointing to assignment. We conclude that an assignment of the chattel paper was made.

The next question raised is whether the assignment of chattel paper constitutes an assignment of the security interest. We note that under general contract law an assignment carries with it all security incidental to the subject matter of the assignment even though it is not specifically named on the agreement or within the assignee's knowledge at the time of the transaction. *Allen v. Hamman Lumber Co.*, 44 Ariz. 145, 34 P.2d 397 (1934); 6A C.J.S. *Assignments* § 89 (1975); 6 Am.Jur.2d *Assignments*, § 121 (1963).

While the U.C.C. makes no express provision regarding this problem, it has been stated that "[b]oth logic and the basic framework of the Code seem to indicate that transfer by a secured party of both the note and security agreement terminates all his rights, duties and interests thereunder." D. Epstein, Security Transfers by Secured Parties, 4 Ga.L.Rev. 527, 530 (1970). Cf. *Norton v. National Bank of Commerce*, 240 Ark. 143, 398 S.W.2d 538 (1966). Similarly, in *District of Columbia v. Hamilton National Bank*, 76 A.2d 60 (D.C.Mun.App.1950), the court held that to deny that a without recourse assignment of chattel paper includes an assignment of the security interest would show ignorance of commercial banking practice. In the present case Empire assigned its right to collect payments, compromise the contract, and its method of recourse. In such a situation, since the assignor is relieved of all risk, there is no longer any reason to impute him an interest to retain the security agreement.

We hold, therefore, that on April 2, 1970, Empire assigned its interest in the motor grader to Arizona Bank, thus giving the Bank first priority, Union second priority, and leaving Empire with no interest at all. Subsequently, on July 14, 1971, Empire perfected another interest in the grader. This interest, however, was inferior in time to that of Union. Then, when K & L paid off the installment sales agreement which Arizona Bank held, Union's perfected security interest had first priority in the motor grader.

We affirm the opinion of the trial court.

EUBANK, P. J., and JACOBSON, J., concur.