**PONTCHARTRAIN STATE BANK, A Louisiana State Bank, Plaintiff-Appellant,**

v.

**Ed POULSON, Individually and Poulson Dozer & Blade, Inc., An Oklahoma Corporation, Defendants-Appellees.**

No. 80–1722.

United States Court of Appeals, Tenth Circuit.

Aug. 4, 1982.

Deno J. Argentos of Shdeed, Hartmann & Argentos, Oklahoma City, Okl., for plaintiff-appellant.

James R. West and Claude S. Woody, Jr. of West, Speck & Findeiss, Oklahoma City, Okl., for defendants-appellees.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Pontchartrain State Bank (Bank) appeals from a judgment dismissing its action for conversion brought in the district court based upon diversity jurisdiction against Poulson Dozer and Blade, Inc. (Dozer, Inc.) and Ed Poulson individually.

Early in March 1976, Saul Siegel, treasurer of D & D Mining Corporation (D & D) negotiated, on behalf of D & D, a $100,000 loan with Bank. On March 2, a financing statement was filed in Oklahoma County, Oklahoma naming Bank as the secured party and D & D as the debtor. The financing statement listed as collateral various equipment identified by serial number. On the same day, Richard T. Sonberg, counsel for D & D, sent a letter to Bank ostensibly vesting it with a security interest in the

equipment identified by the financing statement.

On March 16, D & D executed a $100,000 promissory note to Bank. The instrument contained a clause which provided that the note was secured by the property listed on the reverse side. The property listed on the note included, *inter alia*: "various equipment totaling $158,600.00 located at Haskel County, Oklahoma." The note was signed by Dale E. Johnston individually and by Siegel as treasurer of D & D.

Some time after the loan had been granted, Siegel embezzled a portion of the funds advanced from the loan. D & D, unable to meet its obligations, defaulted on the loan. In December 1976 Bank instituted a default action in Louisiana against D & D and Dale E. Johnston, president of D & D. Bank prevailed in the action, and judgment was entered on its behalf in February 1978.

During April 1978, Ed Poulson bought two pieces of equipment from Dale E. Johnston Construction Co. (Construction Co.). The equipment had been part of the collateral listed on the financing statement filed by D & D on behalf of Bank in March 1976. At all times during the negotiations for the loan, the equipment had been owned by Construction Co. During trial Poulson testified that, before he bought the equipment, he asked Johnston if it was encumbered. Johnston told him that it was "okay". After Poulson received these assurances from Johnston, he asked an attorney to check the records in Woodward County, Oklahoma, the place where Construction Co. was located. The attorney informed Poulson that the equipment was unencumbered. Thereafter Poulson bought the equipment. At that time, although Poulson knew of the existence of D & D, he knew nothing about its operations. The equipment was subsequently sold by Poulson to other parties.

On September 8, 1978 Bank brought suit against Poulson and Dozer, Inc. for conversion of the equipment. The district court ruled that Poulson had not converted the equipment because Bank did not have a security interest in the collateral. The court further ruled that Bank was estopped to claim a priority in the equipment.

On appeal Bank contends that: (1) Bank had a perfected security interest in the equipment and the court thereby erred in finding that Poulson was not a converter, and (2) Bank is not estopped from asserting its security interest.

I.

■ Bank contends that it had a perfected security interest in the equipment. Article 9 of the Oklahoma Commercial Code delineates the requirements of an enforceable security interest. 12A Okl.St.Ann. § 9–203 provides:

(1) ... [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(a) ... [T]he debtor has signed a security agreement which contains a description of the collateral; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

Bank argues that the promissory note and the March 2, 1976 letter from Sonberg to Bank evidence the existence of a security agreement. We disagree. Neither of these documents, by themselves or in combination, fully satisfy the requirements mandated by Article 9.

A security agreement, as defined by 12A Okl.St.Ann. § 9–105, is "an agreement which creates or provides for a security interest." Traditionally, the security agreement was contained in a separate security instrument. Recently, however, some courts have construed other documents, such as promissory notes or financing statements, as security agreements if they otherwise satisfy the requirements of Article 9 and contain language creating or providing for a security interest. *Matter of Bollinger Corp.*, 614 F.2d 924 (3d Cir. 1980); *Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377 (10th Cir. 1975); *Morey Mach. Co., Inc. v. Great Western Indus. Mach. Co.*, 507 F.2d 987 (5th Cir. 1975); *Nunnemaker Transp. Co. v. United California Bank*, 456 F.2d 28 (9th Cir. 1972).

There appears to be a split among the courts regarding the language which is needed to give rise to a security agreement, however. Some courts have held that a document, to be a security agreement, must contain language specifically granting a security interest in collateral. *Transport Equipment Co. v. Guaranty State Bank, supra; Shelton v. Erwin*, 472 F.2d 1118 (8th Cir. 1973); *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700 (10th Cir. 1972). In reaching this conclusion, these courts, relying upon a line of cases beginning with *American Card Co. v. H. M. H. Co.*, 97 R.I. 59, 196 A.2d 150 (1963), equate the § 9–105 "creates or provides for" terminology with the word "grants".

Other courts have been more flexible. In *In re Amex-Protein Development Corporation*, 504 F.2d 1056 (9th Cir. 1974), the court rejected the argument that a security agreement must contain language explicitly conveying a security interest. The court found that a promissory note containing the line: "This note is secured by a Security Interest in subject personal property as per invoices" was sufficient to create a security interest.

The promissory note in this case provided that it was ". . . secured by pledge and delivery of the securities or property mentioned on the reverse . . ." thereto. The note does not specifically grant a security interest to Bank; thus, under the law of this Circuit interpreting the Oklahoma Commercial Code, it does not satisfy the requirements for the creation of a security agreement.

Even if the language is construed to give rise to a security agreement, however, the note is still not enforceable because it fails to satisfy the other requirements of § 9–203. Section 9–203 also requires that the security agreement contain a description of the collateral. Section 9–110 provides that any description of property is sufficient, whether or not it is specific, "if it reasonably identifies what is described". A generic description of property is usually sufficient if the description is adequate to make identification possible through rea-

sonable effort and inspection. *Donald v. Madison Industries, Inc.*, 483 F.2d 837 (10th Cir. 1973); *In re Lehner*, 427 F.2d 357 (10th Cir. 1970).

The promissory note described the collateral as: "various equipment totaling $158,-600.00 located at Haskel County, Oklahoma". Bank argues that Siegel, during the negotiation of the loan, gave Bank a list of Johnston's equipment totaling $158,600 to be used as collateral. Therefore, according to Bank, inasmuch as the dollar figure refers to the equipment on the list, which was identified by serial number, the description was adequate.

In support of its contention, Bank cites several cases which have found a generic description adequate to satisfy the Article 9 requirements. The description in those cases referred to "all equipment" or "all goods". The general description was upheld because all of the debtor's goods or equipment were included and thus a creditor would know at all times what items were encumbered. In this case, on the other hand, while the figure $158,600 refers to some equipment, there is no hint as to which specific equipment is covered. Moreover, although some courts have held that a security agreement may incorporate other documents by reference and thereby satisfy the dictates of Article 9, the doctrine of incorporation by reference is not applicable in this case because the promissory note makes no reference to the list. *In re Amex-Protein Development Corporation, supra*. Bank's argument, then, is without merit.

Bank also argues that the March 2, 1976 letter from Sonberg to Bank suffices as a security agreement. The letter stated that D & D was vesting Bank with "a security interest in certain business equipment and machinery described and identified on the financing statement".

The letter arguably grants a security interest to Bank and adequately describes the collateral by means of the doctrine of incorporation by reference but it fails to fulfill the third § 9–203 requirement. Section 9–203 specifically requires that the *debtor*

sign the agreement, that is, an agent of D & D. The letter, although written at the request of Dale Johnston, was signed only by Richard T. Sonberg. Sonberg was not an agent of D & D; he acted solely as its attorney and thus does not come under § 9–203. That the letter incorporates the financing statement which was signed by Siegel, the treasurer of D & D, is of no moment as the financing statement serves only to identify the collateral and does not serve as the security agreement. Section 9–203 requires that the *agreement* be signed by the debtor.

None of the documents proferred by Bank individually provides evidence of the existence of an enforceable security agreement. Nor do the documents, taken as a whole, satisfy the requirements of § 9–203. Those cases which have allowed various documents to be considered together, by means of the doctrine of incorporation by reference, to construe the existence of a security agreement, have done so only where the other requirements of § 9–203 were satisfied. *In re Numeric Corp.*, 485 F.2d 1328 (1st Cir. 1973); *In re Carmichael Enterprises, Inc.*, 334 F.Supp. 94 (N.D.Ga. 1971). Bank has failed to demonstrate that the requirements of § 9–203 have been fulfilled. The promissory note contains no language creating a security interest and does not adequately describe the collateral, and thus may not be construed as a security agreement. Likewise, the March 2 letter may not serve as a security agreement because it was not signed by the debtor.

Finally, under § 9–203, in order for a security interest to attach, the debtor must have rights in the collateral. It is undisputed that the equipment at issue was owned by Construction Co. during the time D & D was offering it as collateral for the loan from Bank. Bank argues, however, that D & D had sufficient rights in the collateral to grant a security interest. Johns' president of both Construction Co. and D & D, testified that Construction Co. lent the equipment to D & D with the understanding that D & D had the option to buy.

Ordinarily, mere possession of goods or the unexercised option to buy goods is not a sufficient right to grant a security interest in the goods. *Empire Machinery Co. v. Union Rock & Materials*, 119 Ariz. 145, 579 P.2d 1115 (1978); *Morton Booth Co. v. Tiara Furniture, Inc.*, 564 P.2d 210 (Okla.1977). A corporate debtor, however, may be estopped to deny property rights in collateral if the true corporate owner, through acts or omissions, failed to notify the creditor of the identity of the true owner of the collateral. *Matter of Pubs, Inc. of Champaign*, 618 F.2d 432 (7th Cir. 1980).

The determination of whether D & D had sufficient property rights to grant a security interest need not be made in this case, however, inasmuch as the other requirements of a valid security interest were not satisfied. Whether D & D had sufficient rights in the equipment to grant a security interest is significant in this case only with regard to whether Poulson had notice that the property was encumbered. If D & D had rights in the collateral then the financing statement filed by D & D would have been sufficient to put Poulson on notice. Under § 9–302, however, a financing statement is required only to perfect an otherwise valid security agreement. Inasmuch as the other requirements for a security agreement were not satisfied, the fact that D & D filed a financing statement is not significant.

## II.

Bank argues that it should not be estopped to assert a security agreement in the equipment. In light of the above disposition, Bank's contention has been rendered moot and need not be addressed.

WE AFFIRM.

LOGAN, Circuit Judge, concurring.

Because I believe the Pontchartrain State Bank (Bank) and D & D Mining Corporation (D & D) entered into a security agreement that meets the requirements of 12A Okla.Stat.Ann. § 9–203(1)(a), I would decide this case on an alternative ground.

I agree with the majority that no single document in this record meets the requirements of section 9–203(1)(a): (i) a security agreement, (ii) signed by the debtor, (iii) containing a description of the collateral. However, two or more writings that, taken together, establish that a security interest was agreed upon, carry the signature of the debtor, and adequately describe the collateral, satisfy section 9–203. *In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973). In the instant case the March 2 letter from D & D's attorney, Richard T. Sonberg, to the Bank, and the financing statement, taken together, comprise a valid security agreement. Both Sonberg and Dale E. Johnston, President of D & D, testified that Johnston directed Sonberg to write a letter advising the Bank "that they [the Bank] do have the mortgage that we are trying to give to them." R. XI, 120; R. XI, 22. Sonberg's letter states that D & D had vested the Bank with "a security interest in certain business equipment and machinery described and identified on the financing statement," and, by referencing the financing statement, adequately describes the collateral. Because D & D's president gave attorney Sonberg actual authority to inform the Bank of its security interest, I believe an Oklahoma court would find that Sonberg acted as D & D's agent.[1] His signature bound the corporation, *see East Cent. Okla. Elec. Coop. v. Oklahoma Gas & Elec. Co.*, 505 P.2d 1324, 1328 (Okla.1973), and therefore constituted the signature of the debtor for purposes of section 9–203. *See* 12A Okla.Stat.Ann. § 1–103 (unless displaced by particular provisions of the UCC, agency law "shall supplement its provisions").

Nevertheless, I would still affirm because the financing statement given here is defective. With exceptions not here applicable, the UCC requires that the secured party, to perfect all security interests, must file a valid financing statement, *id.* § 9–302(1), signed by the debtor. *Id.* § 9–402(1). When the debtor and the owner of the collateral are not the same person, "the term 'debtor' means the owner of the collateral in any provision of the Article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires." *Id.* § 9–105(1)(d).

The main purpose in filing a financing statement is to guarantee that third parties will have notice of existing security interests in collateral. *See id.* § 9–402, comment 2, 3; *In re Thomas*, 466 F.2d 51, 52 (9th Cir. 1972); *K. N. C. Wholesale, Inc. v. AWMCO, Inc.*, 56 Cal.App.3d 315, 318, 319, 128 Cal. Rptr. 345, 348 (1976).[2] When the party granting the security interest is not the owner of the collateral but only has rights in the collateral given by the true owner, a financing statement in the name of the grantor of the security interest fails to give notice to subsequent creditors of the true owner or to prospective purchasers of the owner's property. Therefore, to prevent fraud or misrepresentation, when the party granting the security interest in the collateral and the owner of the collateral are not the same person, the owner, and perhaps the party granting the security interest, must sign the financing statement. *See K. N. C. Wholesale, Inc. v. AWMCO, Inc.*, 56 Cal.App.3d at 319–20, 128 Cal.Rptr. at 348–49 (construing identical sections of California's UCC); *General Motors Acceptance Corp. v. Washington Trust Co.*, 386 A.2d 1096, 1099 (R.I.1978) (construing identical sections of Rhode Island's UCC).

In the instant case although D & D may have had sufficient rights in the collateral to grant a security interest, *see* 12A Okla. Stat.Ann. § 9–204; *Morton Booth Co. v.*

---

1. The trial court did not find that Sonberg acted as D & D's agent, but neither did it find that Sonberg was not an agent of D & D.

2. J. White & R. Summers, Uniform Commercial Code 956 (2d ed. 1980), explains why it is so important that the debtor's name appear in the financing statement:

"The filing officer uses the debtor's name to compose his index and subsequent parties use the index in order to find the filing. If the debtor's name is wrong, the index may be wrong and subsequent parties thus misled."

Tiara Furniture, Inc., 564 P.2d 210, 214 (Okla.1977), it was not the owner of the collateral. Dale E. Johnston, president of both D & D and Dale E. Johnston Construction Co., testified that the construction company owned the caterpillars, that it had loaned them to D & D with an option to purchase, and that D & D had never exercised its option. R. VI, 14–15. The trial court implicitly accepted Johnston's testimony, by finding that "D & D Mining Corporation did not have such property rights in the equipment to have granted to [Bank] a security interest in said collateral." R. I, 154. Because D & D did not own the collateral, the Bank should have obtained on the financing statement the signature of the owner of the collateral, Dale E. Johnston Construction Co. By not doing so, the Bank failed to perfect its security interest. *See* 12A Okla.Stat.Ann. § 9–302(1).[3]

---

**3.** This reasoning accords with one of the trial court's grounds for decision. The trial court found that "[p]rior to purchasing the caterpillars, [Poulson] made an examination of the records of the County Clerk of Oklahoma County and found no liens or encumbrances under the name of Dale E. Johnston Construction Company," and therefore, that Poulson "had no notice of [Bank's] claim to the property as collateral for the loan made to D & D Mining Corporation." R. I, 150. The court then found that "[a]lthough [the Bank] filed a Standard Form U.C.C. 1 Financing Statement on March 2, 1976, properly describing the subject property, the same does not impart notice to [Poulson] of [the Bank's] claim." R. I, 151.