LOGAN, Circuit Judge.
In this appeal two creditors assert competing security interests in a bankrupt farm equipment dealer’s inventory of used farm implements.
Allis-Chalmers Corporation and the Central Bank of West Greeley separately financed the operations of debtor Tri-State Equipment, Incorporated. Both Allis-Chalmers and Central Bank executed security agreements with Tri-State which gave them security interests in portions of Tri-State’s property. Both filed proper financing statements to perfect their security interests. After Tri-State declared bankruptcy, both asserted interests in used farm implements, not manufactured by Allis-Chalmers, that were accepted as trade-ins by Tri-State in the course of making new equipment sales.[1]
Allis-Chalmers asserts that it has a superior right to the trade-ins because: (1) its financing statement, filed earlier, gave sufficient notice of a security interest in all trade-ins; (2) Central Bank had actual notice of the Allis-Chalmers interest in all of Tri-State’s trade-ins, because a bank officer had personal knowledge of the underlying agreements between Allis-Chalmers and Tri-State; and (3) Central Bank’s actions after filing constituted a waiver of all rights in the trade-ins, or, alternatively, they estopped Central Bank from asserting its rights. The bankruptcy court awarded *969 priority to Central Bank. The district court affirmed. We now reverse, on the ground that Allis-Chalmers’ earlier financing statement gave legally sufficient notice of a security interest in all trade-ins.
Tri-State was an Allis-Chalmers equipment dealer in Colorado. Allis-Chalmers provided floor plan and other financing to it under a 1979 security agreement. The agreement unambiguously gave Allis-Chalmers a security interest in all inventory manufactured by Allis-Chalmers. The agreement also included a security interest in “all proceeds derived therefrom,” R. I, 17, a clause that Allis-Chalmers officials believed extended the lien to any used farm equipment traded in on purchases from TriState. The Allis-Chalmers financing statement, filed later in 1979, again identified the property subject to a security interest, now describing it as:
“The debtor’s inventory of new and used Farm Equipment and new and used Lawn & Garden Equipment, together with Implements, Attachments & accessories thereto and replacement parts therefor and proceeds therefrom manufactured by or offered for sale by Allis-Chalmers Corporation now owned or hereafter acquired, on which the debtor has given or hereafter grants Allis-Chalmers Corporation a security interest.”
R. I, 65 (emphasis added). The statement obviously was poorly phrased.
In 1981, Central Bank provided separate financing to Tri-State. It too entered into a security agreement with Tri-State and filed a financing statement that described a security interest in “all used equipment.” It is undisputed that the Central Bank security agreement and financing statement gave Central Bank a perfected interest in all Tri-State’s trade-ins.[2]
I
The Allis-Chalmers financing statement presents a misdescription problem. As correctly noted by the bankruptcy court awarding priority to Central Bank over Allis-Chalmers, and the district court affirming the decision, the issue is whether the Allis-Chalmers filing was sufficient to put hypothetical later creditors on notice of its possible interest in all used farm implements traded in to Tri-State. See Platte Valley Bank v. B. & J. Construction, Inc., 44 Colo.App. 21, 606 P.2d 455, 456 (Colo. App.1980) (stating general rule).
Conceding that the collateral description in the Allis-Chalmers financing statement was “not a model of clarity,” R. I, 171, the bankruptcy judge nevertheless found it sufficiently clear that he refused to allow parol evidence on the parties’ meaning.[3] Relying on the statement’s reference to “new and used Farm Equipment ... and proceeds therefrom manufactured by or offered for sale by Allis-Chalmers Corporation,” the judge found that Allis-Chalmers had perfected a security interest only in those trade-ins Allis-Chalmers had manufactured. R. I, 172. The judge held that the financing statement did not “sufficiently describe used equipment, implements, attachments, accessories and parts not manufactured or sold by Allis-Chalmers so as to give inquiry notice to third parties of a possible security interest of the collateral in question.” Id. The judge was unmoved by the fact that Allis-Chalmers had also checked a box on the financing statement, indicating simply that “proceeds of collateral are also covered.” R. I, 65.
*970 As an appellate court we review de novo questions of law, and give deference to lower court determinations of questions of fact. Even when we review a lower court’s determination of a fact question on the construction of documentary evidence we must apply a clearly erroneous standard of review. See Anderson v. City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). But the question whether the Allis-Chalmers financing statement gave notice to hypothetical third parties of a possible security interest is not a pure question of fact.
In general a question of fact is one that can be answered with little or no reference to law, and a question of law is one that can be answered with little or no reference to fact. So-called “mixed questions” lie in between. Such mixed questions arise “when the facts are admitted or established and the law is úndisputed,” and the issue is only whether the facts meet the statutory standard. Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986), citing Pullman-Standard v. Swint, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982). If what must be decided in a mixed question involves primarily a consideration of legal principles, then the appellate court reviews de novo. Id. Accord United States v. McConney, 728 F.2d 1195, 1200-04 (9th Cir.1984).
Here, the sufficiency of the notice given by the Allis-Chalmers financing statement must be answered primarily by referring to law. The question was not whether the statement did provide notice to a particular creditor; it was whether the statement could provide notice to future creditors generally. There is an extensive body of law relevant to determining when a financing statement with a misdescription will provide a notice legally sufficient to create a perfected interest.
We agree with the bankruptcy judge’s fact determination that the Allis-Chalmers description was unclear. We disagree with his and the district court’s understanding of the rules that are applied to such unclear descriptions. We review this question de novo.
II
We examine, then, the Allis-Chalmers financing statement. We note first that it does not fail completely to describe the contested Tri-State trade-ins. The first words of the financing statement refer to “[t]he debtor’s inventory of new and used Farm Equipment.” R. I, 65. This would cover the trade-ins. Further, the statement twice lists an interest in “proceeds” flowing from other listed collateral. Under the Uniform Commercial Code (U.C.C.), as enacted in Colorado, “proceeds” includes “whatever is received upon sale, exchange, collection, or other disposition of collateral----” See Colo.Rev.Stat. § 4-9-306(1). Proceeds will include proceeds of proceeds. Id. It is undisputed that the contested trade-ins resulted from the sale of collateral covered explicitly by the Allis-Chalmers financing statement. The trade-ins thus were “proceeds.”
As noted, however, the bankruptcy judge found the terms “used equipment” and “proceeds” in the financing statement were qualified by subsequent words. He read the statement as describing for Allis-Chalmers only an interest in used equipment and proceeds “manufactured by or offered for sale by Allis-Chalmers.” R. I, 171. He therefore held that Allis-Chalmers had not perfected a security interest in those trade-ins it had not manufactured.
The key question is what was modified by the phrase “manufactured by or offered for sale by Allis-Chalmers.” On its face, there are three possible interpretations of what the financing statement describes: (1) inventory manufactured by Allis-Chalmers, and proceeds manufactured by Allis-Chalmers; or (2) all inventory, but only proceeds manufactured by Allis-Chalmers; or (3) only inventory manufactured by Allis-Chalmers, but all proceeds. The language of the sentence suggests that some phrases may have been transposed and some commas may have been left out. The version *971 that Allis-Chalmers asserts, alternative (3), is a possible one. But ambiguity remains, We must therefore ask what effect a financing statement has, when the language it uses has several distinct meanings.
The Colorado U.C.C. provisions answer this question. Section 4-9-402(1) broadly commands that a financing statement “is sufficient if it ... contains a statement indicating the types, or describing the items, of collateral” (emphasis added). Similarly, § 4-9-402(8) provides that a financing statement “substantially complying with requirements of this section is effective even though it contains minor errors which are not seriously misleading.” And § 4-9-110 states that “any description of personal property [under this Article] is sufficient ... whether or not it is specific if it reasonably identifies what is described____”
Although these provisions more directly address vagueness than ambiguity,[4] the Code’s broad policy of leniency is evident. See generally B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶¶ 2.9[5], 2.10 (endorsing principle of lenient standard for sufficiency of description in financing statements). It was the stated intent of the drafters of the U.C.C. financing statement rules to create only a “simple” system of “notice filing,” with minimal formal requirements. See § 4-9-402 official comment, 1-2. Under the U.C.C. system, a proper financing statement will show “merely that the secured party who has filed may have a security interest in the collateral described.” Id. official comment 2 (emphasis added). The drafters frankly acknowledged their expectation that, after a potential lender has encountered a financing statement, “[f]urther inquiry ... will be necessary to disclose the complete state of affairs.” Id. Prior filing rules that required meticulously correct financing statements were expressly disavowed. Id. official comment 5.[5]
The purpose of this approach is to avoid frustrating completed security agreements, freely entered into, that are coupled with good faith filing attempts. The burden is placed on later creditors to protect themselves by getting full information on any prior agreements flagged by the minimal financing statement filing.
For these reasons, the settled rule in Colorado is that the description in the filing “need only put other creditors on notice of a possible security interest in the collateral in question.” Platte Valley Bank v. B. & J. Construction, Inc., 44 Colo.App. 21, 606 P.2d 455, 456 (1980) (quoting Mountain Credit v. Michiana Lumber & Supply, Inc., 31 Colo.App. 112, 498 P.2d 967, 969 (1972)) (emphasis in original) (applying rule and finding vague and ambiguous financing statement description there presented to be sufficient to provide notice and perfect security interest). Most other courts are also now willing to find a description that is unclear or susceptible to more than one distinct meaning sufficient in circumstances in which the description would put other creditors on notice of the need for further inquiry. See Thorp Commercial Corp. v. Northgate Industries, Inc., 654 F.2d 1245, 1248-53 (8th Cir.1981) (applying Minnesota law); United States v. Southeast Mississippi Livestock Farmers Association, 619 F.2d 435, 438-39 (5th Cir. 1980) (applying Mississippi law); In re Munger, 495 F.2d 511, 512 (9th Cir.1974) (applying California law); In re Turnage, 493 F.2d 505, 506-07 (5th Cir.1974) (apply *972 ing Alabama law); Biggins v. Southwest Bank, 490 F.2d 1304,1307-12 (9th Cir.1973) (applying California law); Rooney v. Mason, 394 F.2d 250, 252-53 (10th Cir.1968) (applying Wyoming law); see also Empire Machinery Co. v. Union Rock & Materials Corp., 119 Ariz. 145, 579 P.2d 1115, 1117 (App.1978); Peoples Bank v. Northwest Georgia Bank, 139 Ga.App. 264, 228 S.E.2d 181, 183-84 (1976); National Cash Register v. Firestone, 346 Mass. 255, 191 N.E.2d 471, 475 (1963).[6]
Accordingly, we must hold that the description in the Allis-Chalmers financing statement was sufficient to put Central Bank on notice of a possible Allis-Chalmers security interest in the contested Tri-State trade-ins. We cannot say that the description was so “seriously misleading,” see Colo.Rev.Stat. § 4-9-402(8), that it would simply stop future creditors from making the further inquiries they were obligated by the U.C.C. to make. When the bankruptcy court stated that it was guided by the rule that documents should be construed against the drafter, it applied a formalistic rule of construction inappropriate in the present setting. Under the rules of construction expressly provided by the U.C.C. for financing statements, even an imprecisely worded statement can be sufficient.
Ill
For Allis-Chalmers to have a priority over Central Bank it must have had an “attached” security interest in the contested trade-ins, which the financing statement perfected. See Colo.Rev.Stat. §§ 4-9-301, 4-9-303. The security agreement between Allis-Chalmers and Tri-State provided this. It unambiguously included “all proceeds” in the listed collateral. R. I, 17.
Because we hold that Allis-Chalmers had a superior perfected security interest in the contested Tri-State trade-ins, we do not reach the questions of whether personal knowledge of Allis-Chalmers’ claim to the trade-ins by a Central Bank officer, acquired while he worked for a different bank, could subordinate Central Bank’s position, or whether waiver or estoppel applied to Central Bank.
REVERSED and REMANDED.

. The dispute focuses on three Massey-Ferguson combines, a Diamond III axle trailer, and a Case tractor, together valued at over $100,000.

. There is no assertion here that Central Bank perfected a purchase money interest, which would give it a priority over earlier perfected interests. See Colorado Uniform Commercial Code, Colo.Rev.Stat. §§ 4-9-107, 4 — 9-302(l)(d), 4-9-312(3), (4) (explaining purchase money security interest, and detailing its priority). Absent a purchase money security interest, two perfected security interests will be ranked according to priority in the time of filing or perfection. See id. § 4-9-312(5).

. Parol evidence would not be admissible to show what the filing did in fact mean to Allis-Chalmers or any particular person. The "notice" standard is objective, not subjective. See, e.g., Platte Valley, 606 P.2d at 456. Parol evidence might be admitted to show what this description would mean to third parties. Trade usage among creditors might be relevant, for example.

. They also look more directly to the question of inaccurate description. A financing statement could, for example, describe a 1962 Corvair as a 1963 Corvair. This would probably not be “seriously misleading.” A statement describing a 1962 Corvair as a 1962 Buick probably would be "seriously misleading." Compare McGehee v. Exchange Bank & Trust Co., 561 S.W.2d 926, 931 (Tex.Civ.App.1978); with In re Hodgin, 7 U.C.C. Rep. 612 (W.D.Okla. (Bankr.) 1970).

. See also Colo.Rev.Stat. § 4-9-110, official comment. The drafters state here that, for all of Article Nine, descriptions need only "make possible the identification of the thing described” (emphasis added). Prior rules requiring "exact” or "serial number” descriptions are abandoned.

. A few courts have narrowly construed financing statements with vague or ambiguous descriptions, despite the command of the U.C.C. framers. See, e.g., Ray v. City Bank & Trust Co., 358 F.Supp. 630, 639-41 (S.D.Ohio 1973).
The question of misdescription of collateral in the financing statement is distinct from the question of misdescription in the security agreement. The two documents serve different functions: The security agreement establishes rights between the initial creditor and the debtor, and the financing statement establishes rights between the initial creditor and those who file subsequently. See, e.g., In re Gibson, 14 B.R. 563, 565 (Bankr.N.D.Ill.1981). Descriptions in the security agreement are subject to a higher, but still lenient, standard. See, e.g., In re Middle Atlantic Stud Welding Co., 503 F.2d 1133, 1135-36 (3d Cir.1974); In re Laminated Veneers Co., 471 F.2d 1124, 1125 (2d Cir.1973); James Talcott, Inc. v. Franklin National Bank, 292 Minn. 277, 194 N.W.2d 775 (1972).