In re HOWELL ENTERPRISES, INC., Debtor.

TRADAX AMERICA, INC., Appellant,

v.

FIRST NATIONAL BANK IN STUTT-GART, ARKANSAS and Howell Enterprises, Inc., Appellees.

No. 90–1785.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1990.

Decided June 4, 1991.

Rehearing and Rehearing En Banc Denied July 31, 1991.

Gary Rogers, Little Rock, Ark., for appellant.

Baker Kurrus, Little Rock, Ark., for appellees.

Before McMILLIAN and BEAM, Circuit Judges, and ROSENBAUM,* District Judge.

ROSENBAUM, District Judge.

It all started simply enough. Howell Enterprises, Inc., (Howell) and Tradax America, Inc., (Tradax) both sell rice. A customer, Bar Schwartz Limited (Bar Schwartz), wanted to buy some rice and pay for it with a commercial letter of credit. But Bar Schwartz could not buy rice from Howell because Howell would not accept the commercial letter of credit as payment. This means of payment was acceptable to Tradax, but Bar Schwartz refused to buy rice from Tradax for reasons of its own. So, Howell and Tradax came up with a plan—Tradax would sell its rice to Bar Schwartz under Howell's name. This seemingly simple solution created the complex legal problem now before the Court, a problem the parties clearly did not contemplate when the transaction took place.

## I. BACKGROUND

Howell is an Arkansas corporation engaged in the business of buying, selling, storing, and milling rice. On June 20, 1986, Howell borrowed $2,100,000 from the First National Bank of Stuttgart, Arkansas, (First National) and granted the bank a security interest in all accounts receivable.

Tradax is a New York corporation engaged in the business of buying and selling rice in the United States and abroad.[1] Tradax transacted business with Howell on a regular basis in 1987. One of those transactions engendered this lawsuit.

On February 25, 1987, a contract was signed in the name of Howell, under which rice would be sold by Tradax to Bar Schwartz. Payment was to be accomplished by a one-year commercial letter of credit. Names were used interchangeably throughout the transaction: Tradax was listed as the owner on some shipping documents and on one bill of lading; Howell was listed on another bill of lading and on the certificate of origin; Tradax prepared the shipper's export declaration, but identified the shipper as Howell; Tradax paid the shipping and loading expenses and the brokerage fees, but sometimes did so under Howell's name.

Critical to this controversy, Howell listed the Bar Schwartz transaction as an account receivable on its books, with a corresponding and equivalent account payable to Tradax. Tradax documented the transaction on its books as a sale to Howell, but did not invoice Howell for a sale.

The rice was successfully, but not uneventfully, delivered to Bar Schwartz.[2] In due course, Howell sent an invoice to Bar Schwartz for the purchase price of the rice. On April 29, 1987, Bar Schwartz arranged for the letter of credit to be issued, naming Howell as beneficiary.[3]

On June 18, 1987, Howell presented the letter of credit and the necessary supporting documents to First National. It was understood that Howell would transfer the proceeds to Tradax when the letter of credit matured, in May, 1988. But on April 4, 1988, before the maturity date, Howell filed for Chapter 11 bankruptcy. Upon the filing of the bankruptcy, First National came forward to claim its perfected security interest in Howell's accounts receivable. The Bar Schwartz letter of credit was swept into the bankruptcy.

---

\* The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, sitting by designation.

**1.** Cargill Rice, Inc., became the successor in interest to Tradax in June, 1988.

**2.** A short time after the rice was loaded on a barge, Tradax determined that the ship which would carry the rice overseas was delayed. Tra-

dax arranged a swap with Sunrice, another rice trading company, whereby the original barge-load was sold in exchange for a barge-load of rice available at a later date. The second load of rice was loaded aboard the ocean-going vessel on May 26, 1987.

**3.** The letter of credit expired on June 21, 1987, but did not call for payment until May, 1988.

Tradax brought this complaint before the bankruptcy court on May 9, 1988, asserting that Bar Schwartz's letter of credit was not one of Howell's accounts receivable and therefore was not subject to First National's security interest. Tradax alternatively argued that the letter of credit was subject to a constructive trust in favor of Tradax.

In an order, entered September 8, 1989, the bankruptcy court ruled that Tradax did have an equitable interest in the letter of credit and its proceeds as beneficiary of a constructive trust. The bankruptcy court then looked to the UCC as adopted in Arkansas to define First National's security interest in "all accounts receivable." Section § 4–9–106 of the Arkansas Statutes defines "account" as "any right to payment for goods sold." The bankruptcy court ruled that because the letter of credit could be characterized as a "right to payment," First National had a perfected security interest in the letter of credit. The bankruptcy court, faced with two competing claims to the letter of credit, found that First National qualified as a bona fide purchaser for value and held an interest superior to Tradax's equitable interest.

Tradax appealed to the district court, which affirmed on April 16, 1990. On appeal, Tradax argues that the district court erred in ruling that the Bar Schwartz letter of credit was an "account" or evidence of a right to payment to Howell, that First National had a security interest in the letter of credit and that First National was entitled to prevail on general equitable principles.

## II. DISCUSSION

■ As the second reviewing court, we review the bankruptcy court's legal conclusions *de novo* and its factual findings under the clearly erroneous standard. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). The parties, in this case, do not dispute the factual findings of the bankruptcy court. This case turns, instead, on the legal characterization of the Bar Schwartz letter of credit. As such, our review is *de novo*.

■ Both parties acknowledge that First National had a perfected security interest in Howell's accounts receivable. As the parties would frame the issue, if the letter of credit is an account receivable, First National is entitled to its proceeds; if not an account receivable, the asset goes to Tradax.

■ The Court eschews the parties' categorical inquiry. A letter of credit is an instrument of commerce, which is *sui generis*.[4] Its unique character is reflected in the fact that Article 5 of the UCC is devoted to letters of credit. The Court is disinclined to go beyond the UCC and decide this case on unnecessarily broad grounds. Analysis reveals that the Court need not answer whether a letter of credit can ever constitute an account. It is clear that this particular letter of credit was never intended to be an account and was listed as such purely by happenstance.[5]

In this Court's view, the primary and relevant inquiry is whether or not First National's undisputed security interest can reach that particular line item in Howell's accounts receivable identified as the Bar Schwartz account. With this inquiry in mind, the Court turns to the specific facts of this case.

---

**4.** Letters of credit are means of guaranteeing payment for sales of goods. Here, the seller did not wish to deliver goods without assurance of payment; likewise the buyer did not want to pay prior to receiving the goods. The letter of credit resolved this difficulty by substituting a stable third party's, here a bank's, credit for that of the buyer. Upon receiving the letter of credit, the seller delivers the requested goods to a common carrier and obtains a payment-authorizing document in return. The seller presents the letter of credit and the required documentation to the issuing bank to collect payment. After honoring the letter of credit, the bank is entitled to reimbursement and a fee from the buyer. Upon reimbursement, the bank gives the bill of lading to the buyer who then can present it to the common carrier and receive the goods. *See generally,* 2 J. White & R. Summers, Uniform Commercial Code § 19–1 (3d ed. 1988).

**5.** In this regard, the Court concurs with the district court's view that the issuance of a letter of credit as a means of payment did not alter the nature of the Bar Schwartz account. Order at 3.

Arkansas has adopted the UCC secured transactions and letters of credit provisions. Ark.Stat.Ann. §§ 4–9–101 to 4–9–507; 4–5–101 to 4–5–117. Under Arkansas Statutes, § 4–9–203, a security interest cannot attach unless "the debtor has rights in the collateral." The courts below found that Howell had a legal interest in the Bar Schwartz account receivable, subject to Tradax's equitable interest. This Court has a less expansive view of Howell's rights.

Howell's only claim to the Bar Schwartz account receivable is by reason of its arbitrarily having elected to record the Bar Schwartz letter of credit on its receivable ledger. Tradax had no opportunity to know of or protest this infelicitous listing. More critically, Tradax had no notice that Howell's accounts receivable were encumbered by First National's security interest. The lower courts determined, as matters of fact, that the only agreement between Tradax and Howell was that Howell would allow Tradax to use its name on pertinent documents. Howell did not, and could not, claim any right in the Bar Schwartz account or the proceeds of the letter of credit, because the rice was always owned by Tradax.

■ Certainly Howell acquired physical possession of the letter of credit, but mere possession of such a document is insufficient to establish a right to collateral upon which to base a security interest. *Rohweder v. Aberdeen Production Credit Ass'n*, 765 F.2d 109 (8th Cir.1985); *Pontchartrain State Bank v. Poulson*, 684 F.2d 704, 707 (10th Cir.1982); *Montco, Inc. v. Glatzer*, 665 F.2d 36, 40 (2d Cir.1981).[6] Howell was involved in this transaction for the sole and limited purpose of serving as a conduit for Tradax's sale to Bar Schwartz.

This lawsuit, however, became inevitable when Howell mistakenly attempted to "book" the deal. The Court finds this factual occurrence to be of no legal effect; the fact of booking this transaction as an account receivable did not make it an account receivable in law. Howell did not own and

could not legitimately encumber any interest in the Bar Schwartz account, regardless of the bookkeeping procedure it chose.

■ Finally, the Court declines to embrace the "equitable" theory referenced by the courts below. Each suggested that Tradax was a "culpable" party and was, perforce, responsible for the legal consequences here. Certainly, Tradax and Howell sought to hide the identity of the true seller from Bar Schwartz. But no legal consequences flow from this fact. Legal arrangements through undisclosed partners, agents, and proxies are not unknown in the marketplace. The Court finds no reason, based solely on an undisclosed but legal arrangement, to require Tradax to pay twice, with no hope of recompense, for the same barge of rice by permitting First National to execute its security interest on the Bar Schwartz account. Moreover, while First National was an innocent third party in this transaction, First National has shown no detrimental reliance on Howell's accounting error.

## III. CONCLUSION

For the foregoing reasons we reverse the judgment of the district court and remand the case for entry of judgment in favor of Tradax.

---

6. A debtor who does not own collateral may nonetheless use the collateral for security when authorized to do so by the actual owner. *See* Ark.Stat.Ann. § 4–9–112. No party has suggested that Tradax authorized Howell to use the Bar Schwartz account as collateral for its loan.