PHILLIPS, Circuit Judge,
dissenting.
I respectfully dissent.
ACF’s security interest is limited by two things: (1) the terms of the security agreement; and (2) the Law Firm’s rights to the collateral. For two reasons, I would reverse the grant of summary judgment, which found that ACF’s security interest reached the Disputed Funds.[1] First, the terms of the security agreement do not reach the Disputed Funds. Second, because the Law Firm had no right to keep the Disputed Funds, neither can ACF.
I. The Terms of the Security Agreement
The majority treats the Disputed Funds “as an ‘account’ or ‘right to receive pay *759 ment’ under the terms of ACF’s security interest.” Swpra at 755. I don’t see how either applies to the Disputed Funds.
An Account. Under the security agreement, ACF has a continuing security interest in “[a]ll accounts ... that the [Law Firm] may have....” App. at 220-21. Oklahoma’s version of the UCC defines “account” as “a right to payment of a monetary obligation, whether or not earned by performance: (ii) for services rendered or to be rendered.” 12A Okla. Stat. Ann. l-9-102(a)(2)(A)(ii). I agree that contracts for legal fees, including fees in pending contingency fee cases, are “accounts” under Article 9. Unquestionably, the Law Firm has a right to payment for legal services it rendered-and ACF, in turn, has a security interest in those fees. But, here, the dispute is not about legal fees, it’s about money forwarded to the Law Firm to pay as-yet unpaid litigation expenses. Obtaining money to pay third parties for their services doesn’t give the Law Firm a “right to payment” for services it rendered, so the Disputed Funds don’t qualify as an “account.”
A Right to Receive Payment. Under the security agreement, ACF has a continuing security interest in “all of the [Law Firm’s] rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced. ...” App. at 220-21. As the majority notes, “It is undisputed that this security interest covered ... any and all reimbursements owed to the Law Firm for any incurred costs and expenses arising out of any litigation.” Supra at 750. But, here, there are no reimbursements owed on the Disputed Funds because the Law Firm never paid that portion of the expenses. Moreover, under the security agreement’s actual language, ACF did not “advance” the Disputed Funds. To “advance” means to pay in anticipation of future reimbursement.[2] The Law Firm couldn’t “advance” the litigation expenses without paying them. Continuing on with the security agreement’s language, I am uncertain what a security interest in expenses “to be advanced” even means. Whatever its meaning, the facts of this case don’t support its application against the Disputed Funds.
II. The Law Firm’s Rights
For a creditor to have a valid security interest under Article 9, the debtor must have rights in the collateral. 12A Okla. Stat. Ann. § l-9-203(b)(2). “[T]he baseline rule is that a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be.” U.C.C. § 9-203 cmt. 6 (2000).[3] For the reasons provided below, I believe that ACF does not have rights to the Disputed Funds.
Oklahoma Law. The Law Firm’s rights cannot extend beyond the limits of Oklahoma law. Under 5 Okla. Stat. Ann. § 7, the Law Firm’s fees could not lawfully exceed fifty percent of the net settlement. If the Law Firm had kept the Disputed Funds as collected fees, it would have violated that statute. Similarly, even if the Law Firm somehow had a right to reimbursement for what it hadn’t paid, and could simply keep all the expense money to spend as it pleased, that money would *760 become the income (and collected fees) of the Law Firm. The contingent debt to the Intervenors wouldn’t cancel out the money (or the interest on that money) in the Law Firm’s pocket. For this reason, I don’t see how the Law Firm could keep the Disputed Funds without violating 5 Okla. Stat. Ann. § 7. Because the Law Firm does not have a right to keep the money, and ACF’s rights only extend as far as those of the Law Firm, ACF does not have a right to keep the money.
The Fee Agreement. The Law Firm’s rights are set forth in the contingent fee agreement. As the majority notes, the fee agreement is not a model of clarity. See supra at 756. In construing the agreement, we should remember that the Law Firm drafted it and thus should not benefit from its sloppy draftsmanship. Its rights should shrink, not grow, with each inconsistency and ambiguity.
The fee agreement split the litigation expenses into two halves. In imprecise language, the Law Firm promised to pay the first half and emphasized that Mrs. Rice “shall not be responsible to ever repay to Attorney this amount under any circumstance.” Supp.App. at 287. It required Mrs. Rice to “reimburse” the second half in the event of a recovery.[4] Id.
“Reimburse” (the Law Firm’s word) means the expenses are to be repaid.[5] By requiring Mrs. Rice to “reimburse” the Law Firm for her half of the expenses upon a recovery, the fee agreement reasonably reads as requiring the Law Firm to pay all of the expenses incurred before the recovery. Acting accordingly, until its problems overwhelmed it, the Law Firm did pay expenses incurred — $123,854.28 of the $315,314.27 total. Thus, the Law Firm paid all but $33,802.91 of its half of the expenses before settlement, leaving Mrs. Rice’s half of the total expenses ($157,-657.13) unpaid.
Because one cannot “reimburse ” something that has not been “imbursed,” Mrs. Rice had no duty to “reimburse” the Law Firm for expenses it left unpaid. To conclude otherwise would require contorting “reimburse” to mean “pay,” which we should not do. The fee agreement itself distinguishes between paying and reimbursing — “In the event there is no recovery, then client shall not be responsible to pay or reimburse any litigation expenses.” Supp.App. at 237 (emphasis added). Because Mrs. Rice had no duty to “reimburse” the Law Firm her half of the expenses until it paid them, the Law Firm had no corresponding right to keep her $157,657.13 share of the Disputed Funds.[6]
*761 Mere Possession. Rather than reimbursing the Law Firm for her share of the expenses, Mrs. Rice was left to pay her share of the expenses, which I surmise she did voluntarily through the settlement agreement.[7] For administrative ease, most likely, she provided her half of the litigation expenses to the Law Firm (or Receiver) for it to pay those persons or entities owed litigation expenses. It appears that she chose this route rather than going to the trouble of tracking down the expenses, calculating what the Law Firm had already paid for expenses, and issuing her own payment checks. In essence, Mrs. Rice allowed the Law Firm to possess the money to pay the expenses. Similarly, the unpaid $33,802.91 of the Law Firm’s half of the expenses before settlement are, at most, merely possessed by the Law Firm to pay the balance of the expenses.
As I understand it, the district court assumed that the security interest attached upon the Law Firm’s mere possession of the Disputed Funds, not requiring that the Law Firm have a right to keep the money. It simply found that ACF’s security interest reached the money because “the source of all the funds to pay the Intervenors would come from fees or other accounts or contract rights in favor of [the Law Firm].” ACF 2006 Corp. v. Merritt, 2013 WL 466603 *5 (W.D.Okla. Feb. 7, 2013).
Similarly, the majority opinion finds that “[i]t is undisputed that [ACF’s] security interest covered any and all legal fees and cost reimbursements due to the Law Firm from a client.” Supra at 755. Then it concludes that “the entire $500,000 allocated to the Law Firm must be treated as the Law Firm’s property, specifically as an ‘account’ or ‘right to receive payment’ under the terms of ACF’s security interest.” Id. In my view, this too equates mere possession of property with a more substantial interest.
Here, even though the Law Firm (through the Receiver) possessed the Disputed Funds, it did not have a right to keep them. See In re Howell Enterprises, Inc., 934 F.2d 969, 972 (8th Cir.1991) (“[M]ere possession of [a letter of credit] is insufficient to establish a right to collateral upon which to base a security interest”); Pontchartrain State Bank v. Poulson, 684 F.2d 704, 707 (10th Cir.1982) (“[M]ere possession of goods or the unexercised option to buy goods is not a sufficient right to grant a security interest in the goods”). At most, the Law Firm was serving as a mere conduit of the funds. See In re Howell Enterprises, Inc., 934 F.2d at 972 (security interest did not attach where debtor was involved in transaction for the limited purpose of serving as a conduit for funds).
For the reasons discussed, the Law Firm did not have a right to keep the funds: (1) the contingency fee agreement only gave the Law Firm the right to ownership of settlement funds for litigation expenses it had already paid; and (2) if the Law Firm could own the funds meant for unpaid legal expenses by treating them as Law Firm property (fees), the fee agreement would have violated 5 Okla. Stat. Ann. § 7. However broadly written, the security interest cannot exceed the Law *762 Firm’s rights to the collateral. And, after the settlement agreement, the Law Firm merely had a “right” (or duty, really) to possess the money to pay the expenses.
For these reasons, I would reverse the district court’s grant of summary judgment in favor of ACF and direct that ACF’s perfected security interest does not extend to the Disputed Funds. The district court could then have decided who among the unsecured creditors, including ACF, should receive what amount.

. I agree with the majority that $191,460.04 of the settlement total is in dispute. See supra at 752-53. No one disputes that of the $700,000 total, $200,000 goes to Rice in accordance with the settlement agreement. Also, it is undisputed that ACF’s security interest reaches the Law Firm's net fees of $184,685.73 and the Law Firm’s reimbursement for the $123,854.23 of expenses it paid before the settlement:
Total Recovery $700,000.00
Rice's Net Recovery -$200,000.00
Law Firm’s Net Fees -$184,685.73
Law Firm’s Reimbursement for Expenses Paid -$123,854.23
Disputed Funds $191,460.04

. Oxford English Dictionary (3d ed.2011) ("advance, v." means, inter alia, "7.b. To pay (a sum of money) before it is due, or in anticipation of work still to be done; to pay or lend on security of future reimbursement”).

. In addition, ACF’s counsel conceded at oral argument that ACF’s rights to the money can be no larger than what the Law Firm’s would have been.

. Although this language guaranteed that Mrs. Rice would never be responsible for this half of the expenses, I don’t believe it meant that the Law Firm was not responsible to pay all the litigation expenses as it incurred them. The fee agreement also said that if there was no recovery, Mrs. Rice "shall not be responsible to pay or reimburse any litigation expenses.” Someone had to pay the expenses— if not Mrs. Rice, then the Law Firm.

. Black’s Law Dictionary 1399 (9th ed.2009).

. In response to footnote 2 of the majority opinion, I assert that the meaning of "reimburse” remains the same even if followed by "litigation expenses incurred by attorneys.” The first definition of "reimburse” from the majority’s cited source is "La. To repay (a sum of money which has been spent or lost).” Oxford English Dictionary (3rd ed.2009). So to be "reimbursed,” by my reading, the Law Firm must first have spent money — that is, paid the expenses. "Litigation expenses incurred by attorneys” simply sets the total that is to be divided in half — it doesn't authorize the Law Firm to reimbursement for what it hasn’t paid. By limiting Mrs. Rice’s reimbursement duty to "litigation expenses incurred by attorneys,” the fee agreement says only that Mrs. Rice has no duty to reimburse a share of anything except, "litigation expenses incurred by attorneys” — for instance, non-litigation expenses, or litigation expenses *761 not incurred by the attorneys. As we're forced to tussle over the fee agreement’s language, it bears repeating that the Law Firm drafted this language and that we should resolve its ambiguities against it. And, finally, although no party stressed the meaning of “reimbursement” in its brief, I did question counsel about it at oral argument, and counsel had a full opportunity to speak to the issue.

. The parties did not include the settlement agreement in the record on appeal.